## ALLEN and another *against* JARVIS.

Where the plaintiff alleged, in the declaration, that the defendant, in consideration that the plaintiff would make for the defendant twelve adjusters, [surgical instruments,] the defendant promised to pay the plaintiff, 21 dollars for each; and the evidence was verbal and confused; no specific instructions were requested by the defendant; and the cause was submitted to the jury upon the evidence; after a verdict for the plaintiff, it was held, that a new trial would not be granted, on the ground of a variance.

Where it was alleged, as the consideration of the defendant's promise, that the plaintiff agreed to make and deliver certain adjusters, which were small portable instruments, composed of different parts already prepared, and wanting for their completion little more than to be put together; and the evidence was, of an agreement to finish such instruments; it was held, that there was no material variance.

The courts have been disposed, for some time past, to abolish the refinements which once prevailed on the subject of variances; and much less strictness of proof is now tolerated than formerly.

An agreement to manufacture certain articles and furnish materials, is not a contract for the sale of goods, wares and merchandize, within the 2nd section of our statute of frauds and perjuries.

Where the plaintiff had obtained a verdict against the defendant, in an action for refusing to receive and pay for certain articles, made by the plaintiff,

pursuant to a contract between the parties, specifying the number and price <span style="float:right">*New-London,*</span> of the articles; the defendant moved for a new trial, on the ground that the <span style="float:right">July, 1849.</span> verdict was against the evidence, as to the existence of the alleged contract, as to any particular price being agreed on, and as to its being the price alleged; and it appeared, that the testimony of the plaintiff's witness showed, that the defendant engaged the plaintiff to make the articles, and agreed to receive and pay for them, which was corroborated by incidental circumstances, and was impaired only by the testimony of a witness for the defendant, who said, that he understood from the plaintiff that there was no contract respecting the articles; and as to the question whether any particular price was agreed on, and what it was, the testimony was more loose, but it was properly submitted to the jury; it was held, that the verdict ought not to be set aside on this ground.

Allen<br><i>v.</i><br>Jarvis.

The rule of damages in an action for the non-acceptance of property sold or contracted for, is the amount of the actual injury sustained by the plaintiff, in consequence of such non-acceptance; which is, ordinarily, the difference between the price agreed to be paid for it and its value, where such price exceeds the value.

But where the property in question is utterly worthless in the hands of the plaintiff, the whole price agreed to be paid should be recovered.

If *A* employs *B* to make a particular article for *A*, out of materials furnished by *B*, and during the progress of the work, and before it has assumed the character contracted for, or has been accepted by *A*, or appropriated to his use, the work is stopped by him; *B* cannot maintain against *A* a general action of *indebitatus assumpsit* for work and labour done and materials furnished; the proper remedy for *B*, in such case, being a special action for refusing to accept the article, or for preventing its completion.

THIS was an action of *assumpsit*, in several counts.

In the first, the plaintiffs alleged, that the defendant engaged them to make for him 100 surgical instruments, called *surgical adjusters*, for each of which he promised to pay them 20 dollars, within a reasonable time; that the plaintiffs afterwards, from the 9th of *July*, 1844, to the 31st of *March*, 1845, continued to work, in performance of this contract, on their part, and to make and manufacture said surgical adjusters, and parts and portions thereof, according to said contract; that on the 31st of *March*, 1845, the defendant notified the plaintiffs to discontinue any further work upon said instruments, under said contract, by means whereof the plaintiffs had on hand a large amount of parts or portions of said instruments, in different stages of manufacture, which were wholly useless to them, and had also on hand 20 of said instruments, which the defendant refused to accept and pay for, although they had been offered to him, and he had been often requested, &c.

In the second count, the plaintiffs alleged, that on the 19th

of *February*, 1846, in consideration that the plaintiffs, at the special instance and request of the defendant, would make for him twelve other surgical adjusters, he promised to pay to them 21 dollars for each, *viz.*, 252 dollars for said twelve instruments, on the delivery thereof; that the plaintiffs, on the 1st of *April*, 1846, made and finished said twelve surgical adjusters, and requested the defendant to receive and pay for the same; yet the defendant refused to accept the same, and also refused to pay the plaintiffs said sum of money.

In the third count, the plaintiffs declared, that on the 1st of *April*, 1846, the defendant was indebted to the plaintiffs in the sum of 600 dollars, for the work and labour, care and diligence of the plaintiffs, before that time performed and bestowed in and about the business of the defendant, and at his special instance and request; and also for divers materials by them found and provided in and about said work and labour for the defendant; and being so indebted, &c.

In addition to these counts, there was a general one for work and labour performed and materials furnished, by the plaintiffs, for the defendant.

The cause was tried, on the general issue, at *New-London*, *September* term, 1848.

The plaintiffs having exhibited a bill of particulars, claimed to recover for the two following items embraced therein, with interest:

"*April*, 1846.   To making 12 surgical adjusters,   $252.
      "       "        To making parts of  do.   ordered, 300."

In support of their claim, the plaintiffs read in evidence the following contract: "This agreement, made this 6th day of *November*, 1844, between *George O. Jarvis*, of *Portland, Conn.*, on the one part, and *Allen & Thurber*, of *Norwich, Conn.*, on the other part, *witnesseth*,—That whereas said *Jarvis* has, this day, paid in cash 250 dollars to said *Allen & Thurber*, and has also executed his note of hand, for 750 dollars, bearing date this 6th day of *November*, 1844, and payable eight months from date, at the *Quinebaug Bank*; now therefore, said *Allen & Thurber* agree to manufacture for said *Jarvis*, 50 of his adjusters, including 19 already made and delivered to him and his agents, for the above cash and note of hand: said *Allen & Thurber* agree, that said instruments shall be perfect, in every respect, and that they

shall be made in a good and workmanlike manner, highly finished, and all the parts to be of the best materials for such purposes, and agreeably to instructions this day given by said *Jarvis;* said *Jarvis* reserving to himself the right to have varied the form or manner of making, as he shall direct.    The said *Allen & Thurber* further agree, that they will furnish and send to *Hubbel B. Cone,* within one week of the date above, four entire set of said instruments, agreeably to said *Cone's* order now on hand ; and that there-after, they will supply orders for said instruments from said *Jarvis'* agents, not exceeding six in number at any one time, within one week of the time of receiving said order or orders; and all orders for more than six of said instruments, at one time on hand, they are to supply, within the same ratio of time, to the number of 150 instruments in all, should so many be ordered, by said *Jarvis,* or his agents ; but if from orders received, the number does not amount to 50, (including those already delivered,) by the 1st day of *April,* 1845, then in that case, they are to have made and ready for delivery, that number which will complete the number of 50, including those already delivered on orders previous to that time. *Hubbel B. Cone,* of *Harris-Hill,* of the state of *New-York,* and *Q. G. Bolen,* of the city of *New-York,* and the Rev. *William Jarvis,* of *Portland, Conn.,* agents of said *Jarvis,* are to remit to said *Allen & Thurber* 20 dollars for each instrument so ordered by them, to be paid for, on or before their subsequent orders are satisfied, to such agent or agents, from *John Keigh,* of *New-Bedford, E. & J. Kelley,* of *Nan-tucket,* and *Charles Hogan,* of *New-London.*    The said *Allen & Thurber* are to receive the whole avails of the sales of said instruments, sold by them ; and their said orders are to be duly honoured by said *Allen & Thurber,* and said moneys are to be remitted, by said agents, to said *Allen & Thurber,* as before specified.    The said *Allen & Thurber* are to keep an accurate account of all instruments sent to or sold by them, and of all moneys received by them for the sale of said instruments, and to account to said *Jarvis,* or to his pro-per attorney, for the same.    The interest on all accounts, notes, &c., between said *Jarvis* and said *Allen & Thurber,* to be amicably adjusted hereafter between the parties.    All moneys received by said *Allen & Thurber,* on account of

sales of said adjusters, previous to the falling due of said *Jarvis'* note, aforesaid, are to be paid by said *Allen & Thurber,* in liquidation of said note.      *Allen & Thurber.*

*George O. Jarvis."*

The plaintiffs introduced *Thomas G. Wheelock,* as a witness, who was in their employment, and had charge of their works in their manufacturing establishment. He testified as follows. He was present when the contract was made. When the defendant came to the plaintiffs' shop, he said, he altered his mind as to the contract for 150 adjusters;—he would agree to take 50; he wanted the plaintiffs to go on, and get the other along as fast as they liked; so that they could be got ready on short notice. He would take them, as fast as they were wanted. The contract was then written and signed. After it was executed, and as he took his hat to leave, he said to the plaintiffs, they might go on and make the other hundred, and he would take them as fast as he could sell them. The plaintiffs commenced working upon the fifty, and after having got them partly made, commenced working upon the hundred, and continued to work thereon, until they received word, in a letter from the Rev. *William Jarvis,* that an alteration had been made in the adjusters, and the plaintiffs were requested to stop, which they accordingly did. At that time, the plaintiffs had made most of the parts for the 100 adjusters. In *February,* 1846, the defendant, after his return from *Europe,* came to the plaintiffs' shop again. They had then completed the fifty adjusters. The defendant wished them to alter a dozen of them, which they did; and he paid for them, and for the alteration. *Allen,* one of the plaintiffs, then informed the defendant, that they had twelve more adjusters under way, and nearly completed. There was some conversation about the price of completing them, upon the improved plan. *Allen* said, the price would be 21 dollars, each; but no price was agreed upon. The defendant told *Allen* to go on, and finish them, and he would take them;—that he would send his stamp, that they might be stamped. In that conversation, there was something said about the price with the alteration. They could not agree as to the price. The defendant proposed to get some one else to make them; to which *Allen* agreed, provided he would take the parts already made. The defendant said, he

would go home, and see some one about it ;—he did not know that he could do any better than to give *Allen's* price. The twelve were nearly finished. The defendant told *Allen* to go on, and finish them, and he would take them. As to the remainder, he did not know about them—would go home and see some one, and write him whether he would give his price. He afterwards sent the stamp by Mr. *Cone*; and the twelve were stamped by the plaintiffs.

The defendant, on his part, introduced *Hubbel B. Cone,* as a witness, who testified as follows : "I was employed, by the defendant, as agent, to sell the surgical adjusters, and was authorized to order the instruments, from time to time, as they were wanted, and received about 20 or 25 of them, all of which, I think, I sold. After the 19th of *February*, I carried, by direction of the defendant, a stamp, to stamp the twelve instruments which were over and above the fifty, and which were then in the works, to be finished at some future day. As I understood, there was no contract for the twelve, but they were to be forwarded. They could not be used by any one, unless stamped. I afterwards went again, to get the twelve instruments, and offered a draft of 240 dollars for them. The plaintiffs said, the pay was satisfactory ; but they wanted more price : I cannot recollect what was said ; but the plaintiffs would not sell at the price named in the written contract. I offered them 10 dollars more out of my own pocket. They wanted me to give 23 dollars each, for them. As I understood it from *Allen*, there was no contract for them ; but it would be a damage to them."

The witness further stated, that he was sent by the defendant to get the twelve adjusters, and was authorized by him to pay 20 dollars each for them.

The defendant also called the Rev. *William Jarvis,* who testified, that he acted as the agent of the defendant.

The defendant then read in evidence, sundry letters to and from the plaintiffs, which are not of sufficient importance to require or justify their insertion here.

This was all the evidence relating to any contract respecting the items for which the plaintiffs claimed to recover.

The defendant claimed, that he never made any contract for these things other than the aforesaid written contract,

and that he was not liable to pay the plaintiffs' demand, nor any part thereof.

The plaintiffs, abandoning the first count in their declaration, insisted, that they were entitled to recover upon the second and third counts.

The defendant claimed, that they could not recover upon the second count, because of a variance between the contract proved and the one declared upon; and because the plaintiffs had not proved, that the defendant had ever agreed to pay the price therein stated, or any specific price. He also claimed, that they could not recover upon the third and fourth counts, or on either of them; because there had been no delivery of the property, nor *memorandum* in writing made, nor any earnest money paid. He further claimed, that no recovery could be had for the work upon the unfinished instruments, upon either count, because the instruments were not finished, and were never delivered to, nor received by him; and because the plaintiffs had not declared upon any special agreement. And he requested the court to instruct the jury, in conformity with his claims.

Such instructions were not given; and the cause was submitted to the jury, for them to determine, whether, upon the evidence, the plaintiffs were entitled to recover upon the three last counts, or either of them.

The jury returned a verdict in favour of the plaintiffs, for the sum of 400 dollars, damages, and costs of suit.

The defendant thereupon moved for a new trial, on the ground that the court erred in omitting to charge the jury as requested by him; and because the verdict was against the evidence in the cause, and especially for greater damages than the evidence would warrant.

*McCurdy* and *G. W. Goddard*, in support of the motion, contended, 1. That there could be no recovery on the second count, for variance. In the first place, if the written contract was relied on, the terms and conditions, number of instruments, price, and mode of payment, stated in this count, are all different from those specified in the contract. Secondly, if the conversation in *February,* 1846, is relied on, *that* does not sustain the count. The averment is, of an agreement to *make* twelve instruments for the agreed price

of 21 dollars, each.    The proof was of a proposition to *change* and *complete* the twelve then nearly finished ; but no price was agreed on, and no contract completed.    *Kellogg* v. *Denslow*, 14 *Conn. R.* 41.    *Smith* v. *Parker*, 3 *Day*, 312.

2. That there can be no recovery on the third count ; because there was an open special agreement.    *Vanden-heuvel* v. *Storrs*, 3 *Conn. R.* 203.    *Curley* v. *Dean*, 4 *Conn. R.* 259.    *Londregon* v. *Crowley*, 12 *Conn. R.* 558.    1 *U. S. Dig.* 275. *pl.* 185. & *seq.*    1 *U. S. Dig. Sup.* 180. *pl.* 146. & *seq.*    The distinction is this ; where the plaintiff incorporates his materials or his work with the defendant's property so that the defendant has the benefit of it, and the work is completed, the plaintiff may sue on the common counts ; otherwise not.    *Minot's Dig.* 60.

3. That there can be no recovery on the fourth count ; because there was no meeting of the minds of the parties. The price was not agreed upon ; the plaintiffs offering at first to take 21 dollars, and afterwards demanding 23, and the defendant refusing to give either.

4. That the contract was invalid, as being within the statute of frauds.    *Stat.* 406. §2.    1 *Sw. Dig.* 376, 7.    *Calkins* v. *Lockwood*, 16 *Conn. R.* 289. per *Waite, J.*    *Minot's Dig.* 61.

5. That if there was any one count on which there could be no recovery, the court should have said so ; otherwise, the verdict might have been on that count.    The consequences would be, first, the rule of damages is very different under the different counts ; and secondly, the effect of the verdict would be very different, whether given on one count or another ; as in one case, the instruments, materials, &c., would belong to the defendant, and in the other, not.

6. That the verdict is against the evidence.    In the first place, the conversation, at the time of executing the written contract, could not vary it.    3 *Stark. Ev.* 1002.    By that contract, the defendant was bound to take only fifty instruments, unless he ordered more ; and this he never did ; so that he is not liable under that contract.    Secondly, he is not liable on account of any thing said or done in *February*, 1846 ; because no contract was then completed, and because the plaintiffs refused to deliver the instruments, except for a price never before asked.

*Strong* and *Foster*, contra, contended, 1. That a recovery may be had, in this action, for work and materials, under the general counts. The defendant being the patentee of a surgical instrument, called an *adjuster*, entered into a written contract with the plaintiffs, to manufacture a certain number of those instruments, according to a prescribed model; the number being to be completed and delivered as the defendant should want them. After the written contract was executed, the defendant requested the plaintiffs to go on and prepare the *parts* of the instruments, to be in readiness when he should require them. This the plaintiff did, at his request; and after a large portion of the work was done, the defendant, having made some alteration in the construction of his instrument, directed the plaintiffs to suspend the work. Having thus, by his own act, put an end to the work under the contract, he is liable to the plaintiffs for the work and materials, so far as done, and furnished at his request. If the plaintiffs, under these circumstances, consent to waive any claim for the breach of the entire contract, the defendant cannot justly or legally refuse to pay the plaintiffs a reasonable compensation for their labour and materials. Such a refusal would be peculiarly unjust, in this case, as the plaintiffs, by reason of the defendant's monopoly, can neither use nor sell the instruments.

2. That there was no material variance between the claims of the plaintiffs, as stated in the second and third counts, and the evidence.

3. That the defendant cannot resist the claim of the plaintiffs, on the ground of its being within the statute of frauds; this not being a contract for the sale of goods, wares and merchandise, but for work and labour done and materials furnished by the plaintiffs, at the defendant's request. *Garbutt* v. *Watson*, 5 *B. & Ald.* 613. (7 *E. C. L.* 209.) *Towers* v. *Osborne*, 1 *Stra.* 506. *Clayton* v. *Andrews*, 4 *Burr.* 2101. *Spencer* v. *Cone*, 1 *Metc.* 283. *Mixer* v. *Howarth*, 21 *Pick.* 205.

4. That the verdict was fully supported by the evidence: but if otherwise, the cause was properly submitted to the jury upon the evidence, and their verdict, doing justice only, will not be set aside.

STORRS, J. The various questions in this case, arise <span style="font-style:italic">New-London, July, 1849.</span> under the second and third counts of the declaration, the first having been abandoned, and the fourth not distinctly relied upon, by the plaintiffs, on the trial.

Allen
v.
Jarvis.

The questions of variance under the second count, were properly disposed of, by the court below. As to the price agreed to be paid by the defendant for the adjusters, no specific instructions were requested ; the testimony was verbal and confused ; and it was properly left to the jury, to determine its weight. and whether, in that respect, it proved the contract as alleged.

The other claim of variance, which respected the consideration of the defendant's promise, was, we think, unfounded. The adjusters, which were the subject of the contract, were comparatively small, portable instruments, of which all or most of the parts composing them had been already prepared, and very little, if any thing, remained to be done, but to unite them so as to form them into those instruments. The instruments could not properly be said to be *made*,—that is, formed into adjusters, so as to constitute them such,—until these parts should be so united ; and they might be indifferently said to be made or finished, when the parts were so formed or put together. However a contract merely to finish such a structure as a house or ship partly built, might be viewed, on an allegation of a contract to build them, considering the detached situation of the different parts of these articles when the contract was entered into, what remained to be done with them in order to form them into these instruments, and the character of the articles when finished, we do not perceive any such substantial difference between an agreement to make and one to finish them, that, on a question of variance, they should be distinguished. There has been, for some time past, a disposition on the part of courts, and one which we are not disposed to check, to abolish the refinements which once prevailed on the subject of variances ; and much less strictness of proof is now tolerated than formerly. We feel no inclination to retrograde, in this respect, as we should, if we allowed an objection bordering so much on subtilty as the one here made.

The defendant claims, that the verdict on this count, was, in several respects, manifestly against the evidence. He

insists, 1. that the evidence was insufficient to prove that any contract was made between the parties for the making of the twelve adjusters : 2. that, if any was proved, the evidence was insufficient to show that any particular price was agreed on for them : and 3. that if any such price was agreed on, it was not the one stated in that count. It is not necessary to consider these topics separately, nor to repeat the testimony respecting them. The testimony of *Wheelock*, if unimpaired, showed satisfactorily, that the defendant engaged the plaintiffs to finish these twelve instruments for him, and agreed to receive and pay for them. He states, twice, that in the negotiation between the parties respecting them, while the plaintiffs were making them, the defendant told one of the plaintiffs to go on and finish them, and he would take them, and send his stamps that they might be stamped. The stamps here refered to, were those used by the defendant to indicate that instruments of this description were patented by the defendant. He also stated, that the defendant afterwards sent his stamps for that purpose to the plaintiffs, and that the adjusters were stamped by them. The testimony of *Wheelock* was not impaired, unless by that of *Cone*, who confirms *Wheelock* in regard to the sending of the stamps, but states, that he understood from one of the plaintiffs, that there was no contract respecting the twelve adjusters. We do not think, that this latter part of his testimony is sufficient to outweigh the clear proof of a contract derived from the testimony of *Wheelock*, and the circumstances to which both he and *Cone* testified. As to the question whether any particular price was agreed on, and what it was, the testimony is more loose ; but it was properly submitted to the jury, and we do not feel warranted in saying, that they have palpably erred in finding the declaration proved, in this respect. The plaintiffs, therefore, were entitled to recover on the second count.

But the defendant claims, that the damages given on this count, which were the whole value of the articles contracted for, were excessive. The rule of damages, in an action for the non-acceptance of property sold or contracted for, is the amount of the actual injury sustained by the plaintiff, in consequence of such non-acceptance. This is, ordinarily, the difference between the price agreed to be paid for it and its

value, where such price exceeds the value. If it is worth <span style="float:right">*New-London,*<br>July, 1849.</span> that price, the damages are only nominal. But there may be cases where the property is utterly worthless in the hands <span style="float:right">Allen<br>*v.*<br>Jarvis.</span> of the plaintiff, and there the whole price agreed to be paid should be recovered. The present appears to us to be a case of this description. The articles contracted for were those for the exclusive right of making and vending which the defendant has obtained a patent. They could not be lawfully sold, by the plaintiffs; and were therefore worthless to them, in the form in which they were, when they were to be received by the defendant. And there is no evidence to show, that the materials of which they were made, could be converted to any other useful purpose. We do not think, that, under these circumstances, the defendant can justly require us to set aside the verdict, because the jury have given the full amount which he agreed to pay.

The plaintiffs claimed, on the trial, that in pursuance, either of the written contract of *November* 6, 1844, adduced by them in evidence, or a subsequent verbal contract made between them and the defendant, on the same day, they had made the parts of one hundred adjusters, (other than the fifty first mentioned in said written contract, and for which the defendant paid the plaintiffs, in cash and by note,) and were proceeding to complete them, when they were directed, by the defendant, to stop working on them, which they accordingly did; but it was not claimed, that these parts were ever accepted by the defendant. For the value of their labour bestowed on these parts and the materials of which they were composed, the plaintiffs claimed to recover under the third count, which was a general count in *indebitatus assumpsit* for work and labour done, and materials found and provided about that work, by the plaintiffs for the defendant. The verdict shows, that a part of this claim was allowed by the jury. The defendant insists, that, so far as this claim was embraced in the verdict, it was against the evidence.

Assuming, that, in respect to the unfinished instruments, there was a fulfillment by the plaintiffs of the contract, so far as they had proceeded with them, when he was stopped by the defendant, the question presented by the facts, as thus claimed to be proved by the plaintiffs, is, whether, if one employs another to make a particular chattel out of the ma-

*New-London,*
July, 1849.

Allen
*v.*
Jarvis.

terials of the latter, and during the progress of the work, and before it has assumed the character bargained for, it is stopped by the employer, by whom it has not been accepted, and to whose use it has not been in any manner appropriated, the party employed may maintain an action for work and labour generally against the employer. The court are of opinion, that, whether this question be considered on authority or principle, that action, in such a case, cannot be maintained; but that a special action on the case against the employer, is the appropriate remedy. In *Atkinson* & al. v. *Bell* & al., 8 *Barn. & Cress.* 277. (15 *E. C. L.* 216.) S. C. 2 *M. & R.* 292. *A*, having a patent for certain spinning machinery, received an order from *B* to have some spinning frames made for him. *A* employed *C* to make the machines for *B*, and informed the latter, that he had so done. After the machines had been completed, *A* ordered them to be altered. They were afterwards completed according to this new order, and packed up in boxes for *B;* and *C* informed *B*, that they were ready, but he refused to accept them. It was held, that *C* could not recover the price from *B*, in an action for goods bargained and sold, or for work and labour done and materials. This case is decisive of the one before us, and differs from it in no essential particular. The ground of that decision was, that the labour was bestowed on the materials of *C*, the property in which never having vested in *B*, such labour was bestowed for the benefit of *C*, and not of *B*, and was never appropriated to the use of *B*. The principle is thus stated in the conclusion of the judgment of *Bayley*, J., in which he says : " As to the count for work and labour, if you employ a man to build a house on your land, or to make a chattel with your materials, the party who does the work has no power to appropriate the produce of his labour and your materials to any other person. Having bestowed his labour, at your request, on your materials, he may maintain an action against you for work and labour. But if you employ another to work up his own materials in making a chattel, then he may appropriate the produce of that labour and material to any other person. No right to maintain any actions vests in him, during the progress of the work ; but when the chattel has assumed the character bargained for, and the employer accepted it, the party employed may main-

tain an action for goods sold and delivered, or (if the em-
ployer refuses it,) a special action on the case for such re-
fusal; but he cannot maintain an action for work and labour;
because the labour was bestowed on his own materials, and
for himself, and not for the person who employed him."
*Holroyd,* J. says: "As to work and labour, the work was
done and the labour bestowed on the materials of the maker,
in manufacturing an article which never became the property
of the defendant. I am of opinion, therefore, that the work
was done for the bankrupt, (*C*,) and not the defendant."
And *Littledale,* J. also says: "The work and labour and
materials were for the benefit of the machine maker, and not
for the defendants."

The principle that work and labour, for which there may
be a recovery on the general *indebitatus* count, must be for
the benefit of the defendant and therefore appropriated to
his use, is one which does not exclusively apply to labour
bestowed on an article contracted to be made by one, out of
his own materials, for another. It is a universal principle
applicable to all claims on the count for work and labour.
And we find no case in which that count has been sustained,
where the defendant has not received the benefit of the
labour. The difficulty experienced by the courts, has been,
to apply the rule, and to determine in what cases the labour
should be deemed to have been appropriated to his benefit;
examples of which may be seen in *Wilkins* v. *Bromhead* &
al., 6 *Mann. & Gran.* 963. (46 *E. C. L.* 963.,) and the
cases there referred to. It is unnecessary to review the
cases on that subject, since, in the one now before us, it is
very clear, and indeed is conceded, that the defendant never
received the benefit of the labour claimed to be bestowed by
the plaintiffs.

The reason is very obvious, why, in order to sustain a gen-
eral count for work and labour, the labour must be bestowed
for the benefit of the defendant, or, in other words, come to
his use, or be appropriated to him, and with his consent.
This action proceeds on the ground of a promise, by the
defendant, implied by law, to pay for the value of the plain-
tiff's labour. But, on what principle, would the law imply a
promise by him, to pay for labour, of which he never had
the benefit or use? The implication of a promise, in all such

*New-London,*
July, 1849.

Allen
*v.*
Jarvis.

cases, is derived from the fact, that the labour has been bene-
ficial to him.   If there is a liabilty to pay for it, where it has
not been thus beneficial to him, it would not be on the ground
of any promise which the law would imply, but must be
founded solely on a special contract between the parties.
The implication of a promise, in these cases, is founded on
the principle, that justice requires that the defendant should
pay the plaintiff the value of his labour, and therefore the
law presumes, that he promised to do so; but how does jus-
tice require him to pay such value, when he has not been
benefited by the plaintiffs' labour?   He would, indeed, where
he had employed the plaintiff to furnish the materials and
make an article from them, be liable for a violation of his
duty in refusing to accept it, when completed, or preventing
him from finishing it, to pay him, not the value of the labour
bestowed by him, but the damages which he had sustained,
in consequence of such breach of duty; or, if the article
was to be made from the defendant's own materials, the
defendant might not be allowed to say, that he had not re-
ceived the benefit of the plaintiff's labour: but, in the former
case, he would be liable, on the ground of a violation of duty
growing out of an express contract; and in such cases, the
declaration must state such contract, in order that the rights
of the plaintiff, and the violation of it, may appear.   This
is the character of the plaintiffs' claim, in the present case.
To allow the plaintiff, in such cases, to recover under a gen-
eral count for work and labour, would be unjust in most
cases, and indeed in all, except the unusual one where the
injury to the plaintiff in consequence of a non-acceptance of
the work, would amount to its full value, (as was the case
here under the second count,) because under that general
count the plaintiff would recover the whole value of his
labour, while he would retain the benefit of it; whereas in
an action for not accepting the work, or preventing its exe-
cution, he would recover only the amount of the damage to
him in consequence of such acts, which would be an exact
indemnity to him for the injury he had sustained.

   We find no case, which, properly considered, impugns the
principles adopted in *Atkinson* & al. v. *Bell* & al.; on the
contrary, those are numerous in which they have been ap-
proved.   The cases relied on by the plaintiffs, will be found

to be either those where the claim was for work and labour <span style="font-style:italic">New-London,</span> merely of the plaintiff, done for the defendant, and of which <span style="font-style:italic">July, 1849.</span> the latter had received the benefit, by its being appropriated to his use, and where it was not bestowed on an article which was contracted to be made by the plaintiff from his own materials, and it was contemplated that the defendant was to have the benefit of the plaintiff's labour, by receiving the article which was to be thus made ;—or where the labour was bestowed on an article contracted to be made by the plaintiff from his own materials, which, either when completed, or previously, had been accepted by the defendant, or appropriated to his use, by his consent ;—or where the labour was bestowed on the materials of the defendant.

*Allen v. Jarvis.*

So far, therefore, as the verdict embraces damages on the third count, it is against the evidence.

The authorities cited by the plaintiffs, are decisive against the claim of the defendant, that the contract between the parties in this case, was within the statute of frauds.

The result is, that a new trial should be granted, unless the plaintiffs remit all the damages recovered over the sum of two hundred and fifty-two dollars, and interest, to which they are entitled under the second count.

In this opinion the other Judges concurred.

New trial to be granted, *nisi.*