Rand v. White Mountains Railroad.

---

RAND *v.* WHITE MOUNTAINS RAILROAD.

The measure of damages in a suit for the breach of an executory contract to purchase railroad stock, is the difference between the value of the stock, at the agreed price, and its actual or market value at the date of the breach of the contract.

Such difference is a matter of unliquidated damages, to be ascertained by the verdict of a jury, or the finding of some other competent tribunal, and therefore not the subject of attachment in trustee process.

ASSUMPSIT. The disclosure of George W. Nesmith,

the alleged trustee, having been taken, at great length, the questions arising thereon were transferred to this court for determination. The matters in controversy sufficiently appear from the arguments of counsel and the opinion of the court.

*C. W. & E. D. Rand*, for the plaintiff, took the following positions :

I. A subscriber for stock in a corporation, if liable to the calls of the company on assessments, is liable to the creditors of the road in the trustee process. Comp. Stat. 528, sec. 8; *Hills* v. *Smith*, 19 N. H. 383; Redfield on Railways, sec. 75.

II. The trustee is liable on his promise to pay assessments to the principal defendant on five shares of stock, and interest from the time of assessments. Under this head we say : (1.) That five hundred shares were subscribed before any assessments were made. *White Mountains R. R.* v. *Eastman*, 34 N. H. 124; Red. on Railways 69, sec. 2; *Wright* v. *Shelby R. R.*, 16 B. Mon. 5; *Blodgett* v. *Morrill*, 20 Vt. 509; *Kennebec & Portland R. R.* v. *Waters*, 34 Me. 369. (2.) That all the conditional subscriptions deducted by the trustee from the seven hundred and twenty returned to the treasurer, might well go to make up the five hundred shares when the subscriptions were accepted by the company, as they were here, and not repudiated by the subscribers, as they never have been. Red. on Railways 80; 39 Me. 71, 587. (3.) We also say that the four hundred shares, subscribed by Morse & Chamberlain on the same ground, could be reckoned to sustain every assessment except the first. (4.) The trustee cannot be relieved on the ground of any fraud practiced upon him at the time of subscription. Red. on Railways 86, 101; *Pulsford* v. *Richards*, 19 E. L. & E. 392, and *Jennings* v. *Broughton*, 19 E. L. & E. 420, are cited; *Railroad* v. *Eastman*, before cited.

*C. R. Morrison* (with whom were *Pike & Barnard*), for the trustee.

1. The trustee process will not lie in such a case. No election has been made by the directors, whether to sell the shares or not, and the plaintiff cannot elect for them. The defendant, if answerable at all, is only liable for the difference between the sum agreed to be paid and the value of the stock. *Laird* v. *Pim,* 7 M. & W. 474, 478; *Thomson* v. *Alger,* 12 Met. 428, 443; *Phillpots* v. *Evans,* 5 M. & W. 475; Red. on Railways 53. Unliquidated damages cannot be reached by the trustee process. *Bell* v. *Pike,* Grafton, 1845; *Swamscott Machine Company* v. *Partridge,* 25 N. H.; *Foster* v. *Dudley,* 30 N. H. 463. No certificate of stock has ever been tendered, the plaintiff cannot give one, and the corporation is now defunct.

2. The defendant never became a stockholder, and, therefore, he cannot be sued for assessments. *Central Railroad* v. *Johnson,* 30 N. H. 390. Subscription alone did not make him a stockholder. *Boston and Maine Railroad* v. *Bartlett,* 3 Cush. 224; *Hamilton and Deansville Plank Road Company* v. *Rice,* 7 Barb. 157; Pierce on Railroads 58; *Central Railroad* v. *Johnson.* Before his subscription was accepted, and stock assigned to him, he withdrew his subscription. The previous agreement authorized him to withdraw it. The fraudulent concealment of the secret arrangement with several of the subscribers also gave him this right, and he may now set up this fraud as a defence. Red. on Railways, secs., 13, 100, note; Pierce on Railroads 69, 71, 75; *Hoitt* v. *Holcomb,* 23 N. H. 535; s. c., 32 N. H. 185; *The Royal British Bank,* Brockwell's Case, 29 Law Times 375; *Pulsford* v. *Richards,* 19 E. L. & E. 392.

3. The plaintiff does not show that five hundred shares had been in good faith subscribed and accepted. *Central Railroad* v. *Johnson,* before cited; Red. on Railways 80, 88; Pierce on Railroads 68; *Central Turnpike Company* v. *Valentine,* 10 Pick. 142; *Oldtown and Lincoln Railway Com-*

*pany* v. *Veazie*, 39 Me. 571 ; *Troy and Boston Railway* v. *Tibbets*, 17 Barb. 298 ; Red. on Railways 88.

4. The assessments were not upon all the shares, nor equal upon those which were assessed. *Central Railroad* v. *Johnson ; Contoocook Valley Railroad* v. *Barker*, 32 N. H. 363 ; *Henry* v. *Vermillion and Ashland Railroad Company*, 17 Ohio 187 ; *Pen. and Ken. Railroad Company* v. *Dunn*, 39 Me. 587.

5. The unauthorized issuing of the bonds and mortgages, the subsequent sale of the road, and the extinguishment of the corporation, would release the defendant, if otherwise liable. Red. on Railways 90, 93, and note.

FOWLER, J.* The plaintiff seeks to charge the alleged trustee, by virtue of his having subscribed, in the spring or early summer of 1850, for five shares of the capital stock of the defendant corporation. The terms of the subscription were as follows :

" White Mountains Railroad. We, the subscribers, agree to take of the capital stock of the White Mountains Railroad the number of shares set against our names respectively, said shares being one hundred dollars each ; and to pay the same into the treasury of said corporation as ordered by the directors ; and if not paid as assessed, we agree to pay interest from the assessment ; and, if paid faster, we are to receive credit for the interest up to the assessment, for the stock subscribed or toward new stock.

(Signed) GEORGE W. NESMITH, Franklin, five shares," and by others.

Several positions have been taken by the counsel for the alleged trustee, showing why he should not be charged as the trustee of the principal defendant corporation ; to only one of which, in the view a majority of the court

* NESMITH, J., did not sit.

have taken of the matters in controversy between the parties, is it necessary to advert.

It is conceded that, within a few months after this subscription was made by the alleged trustee — but whether before or after assessments had been made upon the shares subscribed for, does not very distinctly appear — he withdrew the subscription, or repudiated the contract, claiming that he had a right to do so by virtue of an agreement made at the time of subscribing ; that he never attended any meeting of the corporation, or did any other act indicating that he considered himself a member or stockholder thereof, or holden as a subscriber for stock therein ; that no stock was ever assigned or tendered to him by the corporation ; no certificate of stock ever issued to him ; that no sale of the shares subscribed for by him was ever made by the corporation for the non-payment of assessments, as the charter provided might be done, and that nothing whatever was done by the corporation except to retain the stock subscribed for by the alleged trustee in their own hands, and make assessments thereon, and give notice thereof to the delinquent and repudiating subscriber.

Upon these admitted and indisputable facts it seems to us quite clear that the delinquent subscriber cannot be chargeable as the trustee of the defendant corporation, upon the strongest view of his liability under the original subscription assumed by the plaintiff himself.

Conceding, for the purposes of this case, that the subscription of the alleged trustee was a valid contract for the purchase by him of the principal defendants of five shares of their capital stock, at one hundred dollars per share, payment to be made from time to time in such assessments as the directors might order, the property in the stock to remain in the corporation, liable to be sold for the non-payment of assessments, and only to pass to the purchaser upon payment in full by him of the stipulated price therefor — which is the only reasonable con-

struction to be given to the contract; that this contract was in no way invalidated or avoided by reason of the alleged fraudulent concealment from the purchaser of the secret arrangement between the corporation and several of their largest subscribers to stock, whereby they were to be holden only for a small proportion of their respective subscriptions; that five hundred shares had been in good faith subscribed and the subscriptions accepted before assessments were made, or the construction of the railroad commenced; that equal assessments were made upon all the shares subscribed for, and that the force of the contract was in no wise impaired by the issuing of preferred stock, or the execution of bonds and mortgages, whereby the defendant corporation and all their stock and franchises became ultimately extinguished; still, it was at most a mere executory contract of the alleged trustee to purchase of the defendant corporation five shares of their stock at a stipulated price, making payment therefor in a specified mode, the property in the stock remaining in the corporation until the purchaser fulfilled his contract, and the alleged trustee, having not only repudiated, but broken it specifically and entirely by refusing to take the stock or pay the assessments ordered, before anything had been done to change the relations of the parties, could only be liable to pay, as damages for the breach of his entire contract, the difference between the agreed price of the five shares of stock contracted for, and the actual or market value of those shares at the date of the breach of his contract by him. This, we think, would be both the legal and the equitable rule, since by it no injustice would or could be done to the defendant corporation; and any other, under the circumstances of the present case, might operate gross wrong to the alleged trustee. At the date of the breach of his contract by the alleged trustee, the defendant corporation held and ever afterward retained the five shares of stock subscribed for, in their hands as

their own property, as fully and absolutely as they had done before the making of the contract to purchase it, with full power and authority to dispose of it as they pleased, and a payment to the corporation of the difference between the market price of the stock at that time and the price agreed to be paid for it by the alleged trustee, would fully indemnify the corporation for the injury sustained by the breach of his contract. *Thompson* v. *Alger*, 12 Met. 443 ; Red. on Railways *53 ; *Hanover* v. *Weare*, 2 N. H. 131.

In *Allen* v. *Jarvis*, 20 Conn. 38, the defendant contracted with the plaintiffs to manufacture for him a number of surgical instruments, of which the defendant was patentee. After they were finished the defendant refused to accept them. The plaintiffs recovered the full price agreed upon, on the ground that the instruments were of no value to them. *Storrs*, J., said : " The rule of damages in an action for the non-acceptance of property, sold or contracted for, is the amount of actual injury sustained by the plaintiffs in consequence of such non-acceptance. This is ordinarily the difference between the price agreed to be paid for it and its value, where such price exceeds the value. If it is worth that price, the damages are only nominal. But there may be cases where the property is utterly worthless in the hands of the plaintiffs, and there the whole price agreed to be paid should be recovered. · The present appears to us to be a case of this description. The articles contracted for were those for the exclusive right of making and vending which the defendant has obtained a patent. They could not be lawfully sold by the plaintiffs, and were, therefore, worthless to them."

In *Phillpots* v. *Evans*, 5 M. & W. 475, it was decided that, where the vendee gives notice before the day of delivery that he will not accept the goods, the measure of damages, in an action against him by the vendor, is still the difference between the contract price and the market

price, when they should have been delivered, and he cannot have them assessed at the market value of the goods at the time when the notice was given."

So in *Laird* v. *Pim*, 7 M. & W. 474, 478, *Parke*, Baron, said : " A party cannot recover the full value of a chattel, unless under circumstances which import that the property has passed to the defendant, as in the case of goods sold and delivered, where they have been absolutely parted with, and cannot be sold again." See, also, 2 Parsons on Contracts 483–4–5, and notes.

In the case under consideration there is no pretence that the property in the stock ever passed to the alleged trustee; it was never assigned or in any way tendered to him by the defendant corporation, and the same was never sold, as it might have been by the express terms of the charter, for the non-payment of the assessments. In a suit for the breach of the alleged trustee's contract, therefore, the proper measure of damages would seem clearly to be the difference between the price at which he agreed to take the stock, and its actual or market value at the date of the breach of his contract.

But this difference is manifestly a matter of unliquidated damages [*Butts* v. *Collins*, 13 Wend. 139, and authorities cited, page 157 ; *M'Cord* v. *Williams*, 2 Ala. 71 ; Cowp. 56 ; 1 W. Bl. 394 ; 4 Johns. Ch. 287], to be ascertained by the verdict of a jury, or the finding of some other competent tribunal ; and unliquidated damages cannot be reached by the trustee process. *Foster* v. *Dudley*, 30 N. H. 463, and authorities cited on page 465.

If there were any doubt what might be the strict rule of law as to the measure of damages in a case like that which the plaintiff claims, and the admitted facts show to exist between the principal defendant and alleged trustee, and whether the principal defendant might not recover the full agreed price of the stock, and compel the alleged trustee to resort to a suit against the corporation to obtain

the stock or the value of it, there can be none as to what would be the fair rule in equity; and it is well settled that the trustee process is an equitable proceeding, so far as relates to the trustee, and that he is entitled to have deducted from his indebtedness or liability to the principal defendant, any legal or equitable claim he may have against him. It would certainly be equitable in the present case that the alleged trustee, having withdrawn his subscription or repudiated his contract to purchase five shares of the principal defendant's stock, before that stock had come to his hands, or any change whatever taken place in the relation of the parties to the contract, and the principal defendants having ever afterward retained the stock in their own possession until it had been extinguished by their own acts, should be allowed to offset against a claim of damages for the non-fulfillment or breach of his contract, the value of the stock he contracted to purchase, as it was at the time he repudiated or broke his contract. *Boardman* v. *Cushing*, 12 N. H. 105; *Swamscott Co.* v. *Partridge*, 25 N. H. 369; *Hills* v. *Smith*, 28 N. H. 369.

With these views of the proper measure of damages as between the alleged trustee and principal defendants, and of the nature of the trustee process, it is entirely unnecessary to examine the various matters urged by the alleged trustee in bar of the right of the principal defendants to recover any thing for the breach of the contract to purchase stock, since, upon the plaintiff's own positions, and the conceded facts in the case, the trustee must be discharged.

<em>Trustee discharged.</em>