# CHAPMAN VS. INGRAM and another.

CONTRACTS, EVIDENCE: (1.) *Agreement to receive lumber, effect of.* (2.) *Error in excluding evidence as to close of lumber season.*

DAMAGES: (3.) *Rule of, where vendee refuses to accept chattels.* (4.) *Rule where vendee carries goods to foreign market.*

1. An agreement to receive at a certain price, at a point on the Chippewa river, all lumber which should be manufactured for the plaintiff at that point during the remainder of the sawing season of that year, "*so long as defendants could run the lumber*" to market down the Chippewa and Mississippi rivers, would not bind them to accept lumber offered after the season for running lumber on those rivers had practically closed, even though it was still physically possible to run said lumber down to some point in Iowa, and it was so run by the plaintiffs.

2. It was error, therefore, in an action for a breach of such agreement, to reject evidence offered by defendants to show *when* the season for running lumber for that year closed.

3. For a refusal to accept chattels according to agreement, the usual measure of damages is, the difference between their contract price and that at which they might have been sold to other parties on the day when the vendee was bound to receive and pay for them.

4. If the vendor carries the goods to another market and sells them, he cannot recover the difference between the contract price and the net proceeds of such sale after deducting the charges for such carriage.

APPEAL from the Circuit Court for *Eau Claire* County.

Action for damages resulting from an alleged breach of contract on the part of defendants, in refusing to receive certain lumber sold them by the plaintiffs. The opinion states the case. Finding for plaintiff, with judgment accordingly, from which the defendants appealed.

*Henry Cousins* and *M. D. Bartlett*, for appellants, contended, first, that the contract having been made at Eau Claire, and requiring the lumber to be delivered there, defendants had a right to the benefit of the Eau Claire market, and plaintiff could not select a market for them. The privilege of selling is merely to fix the market value, and save any depreciation of

the property to the vendor's prejudice. But if he seeks a foreign market, it can only be at his own risk. Plaintiff's conduct in taking the lumber from the market where sold to defendants, after the close of navigation, and selling it at a distance of three hundred miles, without notice to defendants, and appropriating the money to his own use before it was due, amounted to a rescission of the contract. *Healy v. Utley*, 1 Cowen, 345. To bind defendants, he should have given them notice of the re-sale, and such sale must be in the usual mode. *Crooks v. Moore*, 1 Sandf., 297.

*Angell & Ellis*, for respondent, argued that upon the refusal of defendants to receive the lumber when tendered, plaintiff had his choice of two remedies: he might have abandoned the contract, treated it as defendant's, and sued them for the contract price; or he might have re-sold the property without delay and recovered the deficiency, with his expenses as damages. He chose the latter course, and the rule is well settled that where vendee refuses to accept an article tendered him under contract of purchase, vendor may re-sell and charge him with the difference between the contract price and that actually realized. Sedgwick on Damages, 5th edition, 313; *Pollen v. Le Roy*, 30 N. Y., 549, and cases cited; *Bogart v. O'Regan*, 1 E. D. Smith, 590. Such sale may be in the usual mode, it being only requisite to show that the property sold for a fair price, and without fraud or collusion on the part of vendee. Sedgwick on Damages, *supra; Pollen v. LeRoy, supra; Crooks v. Moore*, 1 Sandf., 297.

COLE, J. This is an action for damages brought against the defendants as buyers, for refusing to accept a certain quantity of lumber sold them by the plaintiff. The complaint, as amended on the trial before the referee, in substance alleged that the parties entered into a contract in September, 1868, in and by which the defendants agreed to accept and receive all the lumber which should be manufactured for the plaintiff at the mill of

one Esterbrook, at Eau Claire, during the remainder of the sawing season of that year, so long as the defendants could run said lumber — they paying therefor at the rate of $13 per thousand feet board measure, as fast as the same should be manufactured and delivered, in thirty days after such delivery. The contract was verbal, but it appears that two lots of lumber were delivered on the contract, and that sometime in the last of October or first of November, the plaintiff tendered upon the contract about 79,000 feet of lumber, which the defendants refused to receive. The defendants claimed that by the terms of the contract they only agreed to accept lumber from the plaintiff so long as they should run their mill that season, and that they closed their mill before this lumber was ready for delivery, and that consequently they were not bound to receive it.

On the trial before the referee, the defendants asked the witness Kennedy—one of the defendants—at what time the season for running lumber down the Chippewa and Mississppi rivers closed that year. The question was objected to and ruled out. It was insisted by the defendants before the circuit court that the referee erroneously excluded this evidence, but the court below seems to have thought that this ruling was correct and confirmed the report, notwithstanding this objection. This is the first error relied upon here for a reversal of the judgment.

It appears to us that this evidence was competent and should have been received. According to the contract as set forth in the complaint, and as testified to by the plaintiff himself, the defendants agreed to receive all lumber which should be manufactured for the plaintiff at the mill of Esterbrook, during the fall of 1868, so long as they could run the lumber down the Chippewa and Mississsippi rivers that season. This was the contract according to the plaintiff's understanding, and for breach of which the action was brought. In this view of the matter, is it not manifest that the time when the season for running lumber down the Chippewa and Mississippi rivers closed, was a material question in the case? Suppose the defendants could show

that the season for running lumber down those rivers, practic-
ally closed for that year, before this 79,000 feet was ready for
delivery upon the contract, would not this be a perfect defense
to the action, even upon the plaintiff's case? The question
really admits of no discussion. If the defendants received all
the lumber ready for delivery during the season, while they
could run to market, then manifestly they had performed their
contract. They were certainly under no obligation to receive
the lumber after the lumber running season had closed, and
after the time they had agreed to accept it. And hence it was
proper and material to show in this aspect of the case when the
season for running lumber down the river, did in fact practi-
cally close that fall. The evidence offered and excluded, was
intended to prove that fact and should have been admitted. It
is true it appeared in evidence that this lumber was, after it was
tendered to the defendants on the contract, run by the plaintiff
down to Lansing, Iowa, and there sold about the middle of No-
vember. But even this does not satisfactorily show that the
lumber was tendered within the time contemplated by the par-
ties, and before the season for running lumber had closed. For
the contract evidently required that the plaintiff should have
his lumber ready for delivery during the lumber running season,
and it would not do to tender lumber after this time, even
though it might be physically possible to run it down the river.
Running the lumber out of season might be attended with in-
creased expense, risk and danger, and a fair, reasonable interpre-
tation of the contract, required that the lumber should be ready
for delivery during the running lumber-season, and not after
that had practically closed. And upon this construction of the
contract, it is very obvious that the evidence offered had a di-
rect bearing upon one of the material issues in the case. And
for the error in excluding it, there must be a new trial.

In the event it should be established on another trial, that
the contract was as claimed by the plaintiff, and that the lum-
ber was tendered upon it within the season for running lumber,

then it will be necessary to consider what is the proper measure of damages for a non-acceptance of the lumber. And upon that point, we suppose the ordinary rule to be the difference between the contract price and the value of the lumber at Eau Claire, the place of performance, at the time the contract was broken. The editor of Mr. Sedgwick's work on the Measure of Damages, says that " in an action for the non-acceptance of property sold or contracted for, the measure of damages is the amount of actual injury sustained by the plaintiff in consequence of such non-acceptance, which is usually the difference between the price agreed and its value, where the price exceeds the value. If it is worth the price, the damages are nominal only. But where the property is worthless in the hands of the plaintiff, the whole price agreed should be recovered. *Allen v. Jarvis*, 20 Conn., 38. In order to give the vendor complete indemnity, he must recover the difference between the agreed price and that at which he would sell on the day when the vendee was bound to receive and pay for the thing bought. *Dana v. Fiedler*, 12 N. Y., 40," (p. 319, note 1, 4th Edition.) In the case of *Dana v. Fiedler*, the court states the doctrine upon this subject in the following words: " In a suit by the vendor against the vendee for non-acceptance of articles sold, in order to give him a complete indemnity, he must recover the difference between the agreed price and that at which he could sell on the day when the vendee was bound to receive and pay for the thing bought." p. 48. In this case the contract was executory. The title to the lumber remained in the plaintiff. There was not such a setting apart of the lumber and a tender thereof to the defendants as to pass the property. This is very plain upon the evidence. And therefore, the proper measure of damages for the non-acceptance of the lumber, is the difference between the contract price and the market price at Eau Claire, at the time when the contract was broken. Benjamin on Sales, p. 559. This is the rule as laid down by this court in *Ganson v. Madigan*, 13 Wis., 67–72, when Mr. Justice PAINE

says: "When the vendor has actually taken all the steps nccessary to vest the title to the goods sold in the vendee, he may sue for goods sold and delivered, and the rule of damages would be the contract price. But where he is ready and willing to perform, and offers to do so, but the vendee refuses, even though the title is not vested in the vendee, the vendor still has his action on the contract for damages. But the rule of damages in such case would be the actual injury sustained, which is ordinarily the difference between the value of the property at the time of the refusal, and the price agreed on. Chitty on Con., 384; Chitty's Pl., 347; 2 Parsons on Con., 484, note h; *Thompson v. Alger*, 12 Met., 428; *Allen v. Jarvis*, 20 Conn., 38; *Girard v. Taggart*, 5 S. & R., 19." See also *Mallory v. Lord*, 29 Barb., 454; *Andrews v. Hoover*, 8 Watts, 239; *McComb v. McKennan*, 2 W. & S., 216.

In this case the lumber was run to Lansing, Iowa, and sold, and the plaintiff was permitted to recover the difference between the price the lumber sold for at that place — after deducting the necessary expenses of running the lumber there — and the contract price. We do not readily perceive upon what principle the plaintiff could claim the right to run the lumber to that place and sell it, and then charge the defendants with the difference between the price contracted to have been paid and what it sold for at Lansing, after deducting the expense of running it there. What right had the plaintiff to select this market at their expense? The lumber was to be delivered at Eau Claire. There is where the defendants had agreed to accept it. Selling the lumber at any place, as is said in *Andrews v. Hoover, supra*, is only a convenient and satisfactory means of ascertaining the difference between the contract price and value of the lumber when it ought to be accepted, but it is not the only means. The plaintiff might, however, show by other evidence what the lumber was worth at Eau Claire, without resorting to a sale, even there, to test its value. But to run the lumber away for a distance of two

or three hundred miles, at that season, and charge the defendants with the increased risk and expense of a re-sale in a foreign market, is imposing upon them a loss which the law does not intend for a breach of the contract.

These remarks are deemed sufficient to inform the court below of our views as to the proper rule of damages, if it should be found that the defendants ought to have accepted the 79,000 feet of lumber when it was tendered by the plaintiff.

*By the Court*—The judgment of the circuit court is reversed and a new trial ordered.