O’BRIEN, J.
—The complaint unites two clauses of action: The •first, for the sale of foot presses at the agreed price of $140; and secondly, for the reasonable value of work, labor, and services and materials furnished in and about the manufacture of tools, fixtures and appurtenances for the making of an incandescent electric lamp switch. The evidence shows that the defendant, with a •view to making an electric switch, some of .the parts of which he had, and which it was necessary to arrange and put together, needed certain tools for that purpose. These had to be made, and in their manufacture certain foot presses were required. Accordingly, the defendant, in the first instance, gave two orders to the plaintiff,—the first, for “ two foot presses and tools for socket springs”; and the second, to “ punch and assemble 10,000 parts ■of socket.” While the terms used are technical, testimony was introduced throwing some light on what the defendant required, and-what the plaintiff did pursuant to these orders. It appears that the foot presses were a staple article, known as the “Bostwick presses,” which were kept in stock by the plaintiff in its storeroom, and were taken thence to a floor in plaintiff’s premises, and •some alterations made therein so as to adjust them to the use intended of making the tools required. These tools were to be made •after certain, drawings or plans furnished after consultation between the defendant and the plaintiff’s, draftsman. Two of such presses, and subsequently three more, which were found to be required, and were likewise adjusted to the purpose, were employed an making the necessary tools, the drawings for which, as well as *459 the preliminary sketches, being based upon models and sample pieces delivered by defendant. After the tools were started and some of them nearly completed, changes were ordered from the original models by defendant, necessitating the making of new tools. The exact relation that the punching and assembling of the parts of socket bore to the electrical switch is not clear; but sufficient appears to show that in addition to completing some, at least, of the tools as changed, a number of the parts were punched, assembled, and produced with the tools called for by the first order, and that a number of such parts were actually delivered to and accepted by the defendant. Becoming dissatisfied, however, the defendant, upon the ground that the charges were large and the work unsatisfactory, ordered the plaintiff to stop work, which was done. Prior to that time the plaintiff had furnished a large amount of material and labor in making the tools, and in punching and assembling the parts supplied by the defendant, the details of which appear in plaintiff’s bill of particulars, as well as the prices charged therefor, which were sworn to as being fair and reasonable.
The question first presented is as to whether the plaintiff made outfits first cause of action for the sale and delivery of five presses, Beferring more particularly now to the testimony bearing upon this issue, we have that of Mr. Garvin, who states generally that “he sold and delivered .five1 foot presses,” at the agreed price of $28 apiece. In addition, we have a bill containing a statement of the sale and the delivery of the presses, which, upon request, was produced at the trial by the defendant, and which shows that it was rendered to and received by the latter. The criticism made upon this testimony is that it is a mere conclusion of Mr. Garvin, and is not supported by any facts. It is true there is no evidence of any order for more than two presses, and, were there anything to the contrary, this evidence might well be regarded as unsatisfactory and- inconclusive to sustain a claim for the agreed price of five presses. But we must remember that the defendant gave no testimony, having succeeded in obtaining a dismissal of plaintiff’s ■complaint after the completion of its testimony, and without being required to meet it.
Another criticism made is that, whatever force may be given to the conclusion of a sale and delivery and the bill rendered, other testimony shows that there was no delivery, the presses being removed simply from plaintiff’s storeroom to another portion of its premises. The answer to this, however, is that the contract between the parties apparently never contemplated any other delivery. The presses were to be emploj'ed on the plaintiff’s premises, after they had been changed and adapted to the use in making the tools which the defondant required to adjust the parts of the electric switch. As we have concluded that the referee erred in dismissing the complaint as to the second cause of action, it will be unnecessary for us to comment, farther, upon the strength of the plaintiff’s case as to the first, the reversal necessarily involving a new trial as to both causes -of action. But we deemed it proper to call attention to this evidence, which the referee seems *460 to have overlooked, and which-we think has a bearing and should be considered upon the question of the sale and delivery of two»of the presses at least, if not of the five.
In regard to the second cause of action, the question presented is one that has been often mooted, and about which the authorities in different jurisdictions differ, as to whether, upon the facts as here presented, the arrangement or contract between the parties-was one of sale, or one for work, labor and services performed and materials furnished.
If this is to be regarded as a sale, and the action as one to recover the contract price, then what was said in Butler v. Butler, 77 N. Y. 472, would be applicable:
“ Doubtless, the plaintiff may in this, as in other cases where the performance of a contract has been prevented by the act or omission of the other party, recover what he lost thereby, if anything, or the damage sustained, if any. Hosmer v. Wilson, 7 Mich. 294. Such a case, however, was not presented to the referee, nor was it Suggested by the pleadings. The plaintiff neither claimed nor proved damages arising from the breach of the contract, nor from being prevented from performing it. On the contrary the cause of action was treated by the plaintiff and by the referee and court below as one where property bargained for had been delivered and title vested in the purchaser, and for which, therefore, the plaintiff, within well-settled rules of law, might, maintain the action and recover the purchase price; and such is-the contention of the learned counsel for the respondent upon this appeal. There is, however, nothing in the evidence to warrant'that view of the case or permit the application of such rule-of law.”
In referring to this question, the referee, in his opinion, says:
“ It is conceded that plaintiff did not complete and deliver the-tools, but, being willing to perform and having been stopped by defendant, the claim is that the company is entitled to recover upon a quantum meruit for the labor performed and material furnished. Assuming in the absence of any evidence on the part of defendant that there was a fulfillment of the contract on the part of the plaintiff in so far as it had been permitted to proceed, the question presented is whether in a contract for specific articles to be manufactured out .of materials of the vendor, and before the article liasacquired the character contracted for, and without any appropriation to the use of the vendee, the former can maintain an action-for the value of the labor and material expended. Of course, it is well settled that in the case of a contract for labor and services, where the defendant prevents the fulfillment, and plaintiff has been induced to expend his labor for him, he may recover its reasonable value in an action upon a quantum meruit.”
Taking the view that this was a sale, and that in form the action was to recover the contract price, the referee concluded that the complaint should be dismissed. He relies on the well-known-English decision of Atkinson v. Bell, 8 Barn. & C. 277, together with two Hew York decisions (McConihe v. Railroad Co., 20 N. *461 Y. 495; Butler v. Butler, supra), and one in Connecticut (Allen v. Jarvis, 20 Conn. 38).
As to the relief that should be accorded plaintiff, no valid objection was interposed to the pleadings, and it would be a forced construction to hold that the action was in form, one to recover the contract price. The allegation of the complaint is that “ the plaintiff performed work, labor, and services, and furnished material, in and about the manufacture of tools, fixtures, and appurtenances for making an incandescent electric lamp switch, at the special interest and request of the defendant,” and that these “were reasonably worth the sum of $1,290.44, which sum the defendant promised and agreed to pay therefor.” This latter statement is proper pleading, and may be supported by proof of facts from which a promise to pay may be implied. The plaintiff neither by the complaint nor by the proof claimed that a definite contract for a certain number of tools was entered into for which the defendant agreed to pay a definite sum; but the character of the order itself, the allegations of the complaint, and the proof show that what the plaintiff is seeking by its second cause of action is to recover on a quantum meruit for the reasonable value of the work done and the materials furnished. Therefore, we are brought back to the position whence we started, apart from the pleadings, which present no insurmountable difficulty, — whether, upon the evidence, the plaintiff was entitled to relief for some amount, and whether the contract is to be construed as one exclusively for the ■sale of tools. Apart from the tools, concerning which we will speak later, the evidence shows that the plaintiff did perform a large amount of work, not upon its own materials, but upon those furnished by the defendant himself, and that the articles upon which this work had been done were thereafter, under the defendant’s specific instructions, actually delivered to and received by him, without any objection or rejection on his part, and that upon their receipt he stated he wanted more of the same kind. There was therefore, apart from the tools, some value in the work thus performed for the defendant, the amount of which it was the province of the referee to determine; and, whatsoever might be the facts as to the other branches of the case, he should have rendered judgment in plaintiff’s favor for that amount as ascertained, instead of refusing to accord the plaintiff any relief.
The English case of Atkinson v. Bell, supra, as well as Allen v. Jarvis, supra, which is based upon and follows Atkinson v. Bell, is a direct authority for the legal conclusion reached by the referee. The New York case of Butler v. Butler, supra, mentioned by the referee, and from which we have already quoted, does not bear directly upon the question we are now considering; and although McConihe v. Railroad Co., supra, is a seeming, if not a direct, authority, still we must construe it as overruled by later decisions.
Consideration of this question most frequently becomes necessary in cases where it is claimed that a given contract is within the provisions of the statute of frauds relating to sales. The leading *462 case in this state is that of Cooke v. Millard, 65. N.Y. 356, wherein it is said:
“ There are, at least, three distinct views as to the meaning of the words in the statute. Those may be called, for the sake of convenience, the English, the Massachusetts, and the New York rules, as representing 'the decisions in the respective courts. The English rule lays especial stress upon the point whether the articles bargained for can be regarded as goods capable of sale by the professed seller at the time of delivery, without any reference to the inquiry whether they were in existence at the time of the contract or not. . (The Massachusetts rule, which for the present purposes is immaterial, is then stated by the court.) The New York - rule is still different, and it is held here by a long course of decisions that an agreement for the sale of any commodity not in existence at the time, but which the vendor is to manufacture or put in a condition to be delivered, such as flour from wheat not yet ground, or nails to be made from iron belonging to the manufacturer, is not a contract of sale. The New York rule lays stress on the word ‘sale.’ There must be a sale at. the time the contract is made.” ,
See, also, Parsons v. Loucks, 48 N. Y. 17 ; Higgins v. Murray, 73 N. Y. 252 ; Donnell v. Hearn, 12 Daly, 230 ; Hinds v. Kellogg 37 St. Rep. 356.
It will be seen, therefore, that, as to the second cause of action, we think the referee, by following the English rule too closely, has committed- error. Here the parties had made a contract whereby the plaintiff was to manufacture certain articles for the defendant, which were not to be delivered, but were to be used in connection with machinery to complete certain parts of an electric switch, which was the property of the defendant, and certain parts of which had been produced by the defendant himself for the purpose of having them punched and assembled. Before completion of the entire work, defendant notified'plaintiff to stop, which the latter was then bound to do, in preference to proceeding and putting defendant to an increased liability after he thus expressly repudiated the contract. By his act the defendant rendered himself liable to the plaintiff, not under the contract, but rather for a breach thereof, and what the plaintiff was entitled to recover was the damages sustained by him in consequence of the failure of the defendant to keep his contract. The plaintiff was then justified in treating the contract as broken, and had a right to recover for the value of the work, labor, services, and material that he employed on behalf of defendant in work 'under the contract so far as he was permitted to do so.
Of course, in this discussion, we have, as required by the rule, in determining'whether the complaint was properly dismissed, drawn the inferences therefrom favorably to the plaintiff; and we do not desire to intimate what upon a new trial might be the result if'the defendant upon his part could show, as his answer alleges, that performance by plaintiff was so improper, unskillful, and defective as to result in damage instead of benefit; our conclusion being that the plaintiff made out a prima facie case, and that the ruling *463 dismissing the complaint was erroneous, for which the judgment should be reversed, and a new trial ordered before another referee,, with costs to the appellant to abide the event.
All concur»