## MALLORY *vs.* LORD.

On the 22d of April, 1846, the plaintiff agreed to sell to the defendant a canal boat and a pair of horses, at the price of $800, payable by installments of $40 per trip; the boat to be employed in the business of the plaintiff, and the boat and horses to remain the property of the plaintiff, until the price should be paid.  In pursuance of this agreement, the defendant made four trips with the boat, paying to the plaintiff $40 each trip.  About the 1st of September he abandoned the boat and the employment of the plaintiff, retaining the horses, and the plaintiff resumed the possession of the boat in October thereafter, and subsequently sold the same to C. for $550, without notice to the defendant.  *Held* that the contract was put an end to, by the voluntary act of the parties, except so far as it affected or controlled their rights in respect to the question of damages.

*Held also,* that treating the contract as broken, by the defendant, the plaintiff was entitled to recover such damages as resulted from the breach.  And that, assuming the value of the boat and horses to have been the sum fixed as the price thereof, in the contract, the plaintiff's damages would be the difference or deterioration in value of the boat between the time when the defendant took possession, and the time when the plaintiff resumed the possession thereof; the value of the horses retained by the defendant; and any other loss or injury sustained by the plaintiff from the neglect or refusal of the defendant to carry his freight, with interest thereon, deducting the amount paid by the defendant upon the contract.

*Held further,* that the plaintiff, after having resumed possession of the property, had no right to sell the same at private sale, without notice to the defendant.  And that it was error for the judge to charge the jury that the plaintiff was entitled to recover the $800, the price fixed in the contract, and interest, after deducting the sum of $550 for which he sold the boat to C., and $160, the amount paid by the defendant, on the contract.

THIS action was brought to recover damages of the defendant for the breach of an agreement between the parties,

made on the 22d of April, 1856, whereby the plaintiff agreed to sell to the defendant a canal boat and pair of horses at the price of $800, payable by installments of $40 per trip, the boat to be employed in the business of the plaintiff, and it and the horses to remain the property of the plaintiff until the price should be fully paid. The complaint alleged the failure of the defendant to perform, and an abandonment by him of the boat, and that the plaintiff was obliged to receive the same in an injured condition, to his damage, &c. The answer, first, denied the complaint, and second, alleged that the defendant was ready to perform, and did perform, until the plaintiff took the boat and thereby prevented a further performance, &c. It appeared that four trips were made with the boat in the season of 1856, pursuant to the agreement, and $40 was paid to the plaintiff each trip, according to the terms thereof. The first two trips were made by the defendant himself, and the other two by Marvin Lord, by arrangement with and consent of the plaintiff. On his return, in September, after making the fourth trip, Marvin Lord was taken violently ill, and thereby compelled to leave the boat at Havana, (in charge of a person there,) about 20. miles from Corning ; the water in the canal being too low to run the boat to Corning at the time. The plaintiff soon after (in October) took the boat into his possession and locked it up at Gibson, near Corning. Marvin Lord soon after recovered his health and endeavored to get the boat, to run it pursuant to the agreement, but was unable to get possession—the plaintiff and his agents refusing to let him or the defendant have it. Neither the defendant nor Marvin ever had any possession or control of the boat. The canal navigation that season closed in December. The plaintiff kept the boat in his possession until about the 25th of April, 1857, when he sold and delivered it and a team to Joseph Comfort, for $850, at private sale, without notice to the defendant. At the close of the plaintiff's testimony the defendant moved for a nonsuit, upon the grounds, 1st. That the plaintiff had failed

to make out a cause of action. 2d. That there was an entire failure of proof to support the complaint. 3d. That there was no breach of contract, on the part of the defendant, shown. 4th. That the plaintiff, by taking the boat into his possession, had committed a breach of the contract on his part. 5th. There was no proof that the plaintiff kept and performed the contract on his part. 6th. That the plaintiff, by taking the boat into his possession, and retaining possession thereof, and by his conduct in respect thereto, put an end to the contract, and could not recover thereon. 7th. That the plaintiff had rescinded the contract by his own act. 8th. That there was no sum due and payable upon the contract at the time of the commencement of this action. 9th. That no damages had been shown, to authorize the jury to find a verdict for the plaintiff. The court denied the motion. It was claimed by the plaintiff's counsel, on the trial, that the boat was sold to Comfort for $550.

The court charged the jury that if they found for the plaintiff he was entitled to recover $800, (the sum mentioned in the contract sued on,) and interest from date of contract, less the sum of $550, (for which the plaintiff sold the boat to Comfort,) to be applied as of the time of such sale to Comfort; also less the four payments of $40 each ($160) made on the contract, to be applied as of the time they were made, respectively. To which charge the counsel for the defendant excepted. The jury found a verdict for the plaintiff for $127. From the judgment entered upon such verdict the defendant appealed.

*Geo. B. Bradley,* for the appellant. I. The plaintiff was not entitled to recover, and the motion for a nonsuit ought to have been granted. (1.) The agreement set forth in the complaint could not be the basis of an action by the plaintiff for any purpose, except to recover the purchase money that should become due thereon; even a breach thereof by the defendant would not authorize an action thereon for any other purpose. A

Mallory *v.* Lord.

failure by the defendant to perform service under it would be but a failure to pay the purchase price. But, in this case, it appears by the evidence that there was no sum due or payable on the agreement, at the time of the commencement of the action. (2.) In case of a breach of the agreement by the defendant, the plaintiff had only one of two remedies ; one, (in case of breach so as to authorize it,) would be to treat the sale to the defendant as absolute, and bring his action for the price, and the other, to retake the property and thereby rescind the agreement. The plaintiff having resorted to the latter remedy, thereby rescinded the agreement, and necessarily deprived himself of the former. He cannot avail himself of both. (*Lloyd* v. *Brewster,* 4 *Paige,* 537. *Junkins* v. *Simpson,* 2 *Shepley,* 364. *Hill* v. *Greene,* 4 *Pick.* 114. *Kettletas* v. *Fleet, Anth. N. P.* 36.) (3.) By the terms of the agreement, and in fact, the title to the property remained in the plaintiff, and the defendant was not at liberty to treat the agreement as any thing more than one for service—he being a mere servant of the plaintiff—until the agreement was fully performed on his part. (*Tuthill* v. *Wheeler,* 6 *Barb.* 362, 5. *The Lehigh Coal Co.* v. *Field,* 8 *Watts & Serg.* 232. *Strong* v. *Taylor,* 2 *Hill,* 326.) And the plaintiff, by taking and selling the boat, elected to so treat the agreement, and so took and sold it as owner. But upon the trial the plaintiff did not, and could not, show any damages, which in that aspect could be the basis of a recovery. He certainly could not legally recover the price of the property as damages for loss of service. (4.) The plaintiff having delivered the property to the defendant, under the agreement, retaining the title thereto, afterwards voluntarily elected to take, and did without the consent of the defendant take the boat into his possession, retain and sell it to another party. It must be held that he took the boat as owner, and thereby rescinded the agreement, and he has no right of action thereon. (*Junkins* v. *Simpson,* 2 *Shep.* 364. *Gary* v. *Hill,* 11 *John.* 441. *Raymond* v. *Bearnard,* 12 *id.* 274. *Winter* v. *Livingston,* 13 *id.* 54.) After having taken

and sold the boat as owner thereof, the plaintiff could not upon any legal principle recover the price of the property, of the defendant. Such recovery could only be had upon the assumption that the title to the property had passed, or would thereby pass, to the defendant. But the plaintiff having retaken the boat and necessarily prevented the defendant from having or taking title, is *estopped* from claiming a right to recover the price. (*In re Humbertson*, 1 *De Gex*, 262. *Dubois* v. *Del. & H. Canal Co.*, 4 *Wend.* 285.) (5.) The plaintiff failed to show any breach of the agreement on the part of the defendant. The illness of Marvin Lord necessarily compelled him to temporarily cease running the boat, which afforded an excuse for non-performance of service at that time. There is no fault on the part of the defendant, claimed. And there is no proof whatever that the defendant or Marvin abandoned the boat, but the contrary appears. Marvin left the boat, for the time being, in charge of another. The defendant had no knowledge of the misfortune which compelled Marvin to leave the boat. (6.) The plaintiff, by taking and retaining the boat, committed a breach of the agreement, and the defendant could not be required in the spring following to retake the boat and run it under the contract, and was justified in then stating that he was not going to take and run the boat, for the reason then given by him. He was at liberty to treat the agreement as rescinded. It seems he did, and offered to return the horses to the plaintiff, who refused to receive them. (7.) There was a failure of proof to support the complaint. The action, as appears thereby, was based upon the contract, alleging as a reason for recovery, that the defendant abandoned the boat and that the plaintiff was obliged to lose the use thereof, and receive the same greatly injured, &c. There is no proof, or facts, which authorize a recovery on any such basis. (8.) No damages whatever were shown, which could be the basis of a recovery.

II. The court erred in the charge to the jury, and the defendant's exception thereto was well taken. (1.) By this charge

Mallory *v.* Lord.

the jury in effect were instructed that the measure of damages was the contract price for the property, deducting the amount paid thereon, (the amount for which the plaintiff sold the boat to Comfort treated as so much paid and applied on the agreement.) In view of the facts that the title to the boat remained in the plaintiff, and that the plaintiff, after having delivered it to the defendant, voluntarily took and sold it, a recovery could not, upon any legal principle, be based upon the agreement price as the measure of damages. (2.) It is only where title has passed from the vendor to the vendee, and the property has been left in possession of the vendor as bailee having a lien for the price, that the vendor is at liberty to assume the character of agent or trustee of the vendee in respect to the property sold, so as to authorize him to sell the property to a third party, apply the proceeds upon the price, and bring an action against the vendee for the deficiency. (*Sands* v. *Taylor,* 5 *John.* 395. *Laird* v. *Pim,* 7 *M. & W.* 474, 478. *Dunlop* v. *Grote,* 2 *C. & Kir.* 153.) That is allowed upon the principle that the vendee has the title, the vendor having a lien for the price and being bailee from necessity. But where the title has not passed and the agreement of sale is executory merely, the law affords no such right to the vendor: his only remedy there is in case of breach by the vendee to bring his action to recover the difference between the market value and contract price as the measure of damages. (*McNaughter* v. *Cassaly,* 4 *McLean,* 530. *Laird* v. *Pim, supra. Dunlop* v. *Grote, sup. Sedgwick on Dam.* 283.) The implied condition in sales of property, that payment shall be made on delivery, does not operate to prevent the title passing to the vendee before payment and delivery; but title does pass to and vest in the vendee by the bargain; the right of the vendor being that of *posses-ion* merely. (*Willis* v. *Willis,* 6 *Dana,* 49. *Wing* v. *Clark,* 24 *Maine Rep.* 366. *Pleasants* v. *Pendleton,* 6 *Rand.* 473.) But otherwise, where, by the agreement of sale, it is expressly provided that the property shall remain in the vendor until payment at a future day. (*Porter* v *Pettengill,* 12 *N. H. Rep.*

299. *Sargent* v. *Gile,* 8 *id.* 325. *Gambling* v. *Read,* 1 *Meigs,* 281. *Bigelow* v. *Huntley,* 8 *Verm. R.* 151. *Ayer* v. *Bartlett,* 9 *Pick.* 156. *Tibbits* v. *Towle,* 3 *Fairf. Rep.* 341. *Bennett* v. *Sims, Rice,* 421.) (3.) In this case, upon the assumed and undisputed facts, the plaintiff had no right to charge the defendant with the deficiency existing after selling the boat to Comfort. The title to the property never passed to the defendant, but continued in the plaintiff. The plaintiff delivered the property to the defendant under the agreement, and afterwards voluntarily retook the boat into his possession. The plaintiff had no right to take the boat, except as owner, and it must be held he took it as such ; and after taking it as owner, he was not at liberty to insist that he held and sold it as trustee or agent of the defendant. The plaintiff had no lien on the boat for the price. Title and lien could not be held by the same person. No lien for price was reserved by the terms of the agreement. None was implied, the property being delivered to the defendant. The defendant did not deliver the boat into the plaintiff's possession to hold, or in any manner consent that the plaintiff should take, hold or sell it as his (the defendant's) property. The sale of the boat to Comfort was made by the plaintiff, for such price as he chose, without the direction or authority of the defendant, who had no knowledge or notice thereof. The charge and verdict, in respect to the measure of damages, are therefore without evidence or legal principle to support them.

III. The proof offered, to show the price for which the boat was sold by the plaintiff to Comfort, was incompetent.

IV. The defendant ought to have been permitted to show that the boat was in a better condition, and worth more, at the time the plaintiff took it, than when the agreement was made. Also the same in respect to the condition and value of the horses when the defendant offered to return them after the plaintiff had taken the boat.

*G. F. Spencer,* for the respondent. The only substantial questions in the case are, 1st. Whether the plaintiff, having taken possession of and sold the boat after the defendant had abandoned it and refused to perform the contract, can maintain the action; and, 2d. What is the rule of damages?

I. The contract, and the breach of it by the defendant, are established both by the evidence and the verdict of the jury.

II. The contract was an executory agreement of sale. By the terms of it, no title vested in the defendant, till a full performance by him. His possession gave him no present right of property, and he was not at liberty to use it, except in the manner specified in the contract. Upon his refusal or failure to perform, the right of possession revested in the plaintiff; but his exercise of that right did not take away his remedy for the breach of the contract. The contract was not abandoned or rescinded. It was only broken. (*Barber* v. *Rose,* 5 *Hill,* 76.) The defendant enjoyed the fruits of the contract in the use of it one season, and the plaintiff in the payments which were made on it in the same time. In addition to this, the defendant, immediately after he claims a breach of the contract on the part of the plaintiff, sold one of the horses specified in the contract, and kept and used the other till the following spring. If the parties did not agree to rescind, the defendant, after this, could not exercise the right to rescind the contract. (2 *Parsons on Contracts,* 189, 192. *Dubois* v. *Del. & Hud. Canal Co.,* 4 *Wend.* 285. *Voorhees* v. *Earl,* 2 *Hill,* 288, 293. *Moyer* v. *Shoemaker,* 5 *Barb.* 319, 322.) The plaintiff did not consent to abandon or rescind the agreement; for in the spring following the abandonment of the boat by the defendant, he tendered the boat to the defendant, telling him that he still considered it as his.

III. In case of an executory contract for the sale of personal property, when the purchaser fails or refuses to complete the purchase, the vendor may sell the property and charge the purchaser with the difference between the contract price and the price realized on such sale. (2 *Parsons on Contracts,*

483–7. *Sands* v. *Taylor*, 5 *John.* 395. *Bement* v. *Smith*, 15 *Wend.* 493. *Stanton* v. *Small*, 3 *Sandf.* 230. *Sedgwick on Damages*, 282.) It follows that the ruling of the court upon the admission of evidence and in the charge to the jury was correct. As the boat was sold in connection with other property, it was competent to ascertain what was realized for the boat separately, either by showing what the other property was worth, or by showing the price fixed upon each in the contract of sale. If the rule of damages claimed by the plaintiff, and laid down by the court, is correct, the evidence offered by the defendant, that the boat was worth more when it came into the possession of the plaintiff in the fall of 1856, than when the contract was made, was immaterial, and was properly excluded: 1st. Because the defendant had his option to take the boat in the following spring. 2d. Because the plaintiff had the option to fix the value by a sale, and this right could not be defeated by the arbitrary opinion of a witness. 3d. It does not appear that there was any market for such property, by which its value could be determined. Equally proper was the exclusion of evidence that the horses were in as good condition at the time of the offer to return them as when the purchase was made. The defendant, by selling one and keeping the other several months after he ascertained the fact on which his claim to return the horses was founded, precluded himself from any right to make such return.

IV. No notice of the plaintiff's intention to sell the boat was necessary, in order to make the defendant liable for the difference between the contract price and the price realized on the sale. 1. The condition of the contract that the title to the boat was to remain in the plaintiff till full payment of the purchase money, was in itself notice of all rights of the plaintiff, one of which was the right of sale. 2. The plaintiff did give notice to the defendant of his intention to sell the property in case the defendant refused to perform his contract. If any notice was required, this was all that was necessary.

V. It is eminently just and equitable that a party who breaks his contract should make the other party good for the · damages which his breach has occasioned, and that when a certain means of ascertaining such damages has been adopted, it should not lie in the power of the party in fault to defeat the claim for such damages by the uncertain and variable opinions of witnesses.

*By the Court*, E. DARWIN SMITH, J.   There being in this case no exceptions to the charge of the judge at the circuit, except in relation to the question of damages, it must be assumed that the charge was unexceptionable upon the merits, and the questions of facts arising upon the evidence, under the pleadings, were in due form properly submitted to the jury.   The breach of the defendant's contract, as alleged in the complaint, consisted in his neglect and refusal to employ the boat in question in transporting for the plaintiff, and in abandoning the said boat after using the same during the greater portion of the season of navigation, whereby the plaintiff was obliged to receive the same injured and deteriorated in value. In finding for the plaintiff, the jury have affirmed, in effect, that the defendant was guilty of the breach of contract alleged, in manner and form as claimed in ·the complaint.   In the absence of any precise statement of the charge upon questions of fact submitted to the jury, it must be assumed that such was the issue duly and fairly submitted to them.

It appears that the canal boat in question made four trips in the season of 1856, and that the last trip was in the month of August, and the $40 mentioned in the contract was duly paid to the plaintiff on or out of the freight of each trip. There was, therefore, no breach of contract or refusal of the defendant to perform the same on his part, till after these trips were completed.   From the evidence, the jury would have been warranted in finding, and must have found, that the defendant abandoned the boat and the employment of the plaintiff about the 1st of September, 1856, and that the plain-

tiff, by reason of such abandonment, resumed the possession of the same about the 1st or early in the month of October afterwards. The contract was then put an end to by the voluntary abandonment of the boat and the use of the same in the service of the plaintiff, by the defendant, early in the fall of 1856. From the time the plaintiff thus resumed the possession of the boat, he must be deemed under this verdict to have asserted his rights of property in it as *owner*, and the contract should be deemed at an end, except so far as it affects or controls the rights of the parties in respect to the question of damages.

Treating the contract as thus broken and put an end to by the voluntary abandonment by the defendant of the plaintiff's employment, and of the use of the boat in his service, on or about the 1st of September, the plaintiff was entitled to recover such damages as resulted from such violation or breach of the contract. Assuming the value of the boat and horses to have been the contract price when the defendant received them, which he could not deny, the plaintiff's damages would be the difference or deterioration in value of the boat between the time when the defendant took possession and the time when the plaintiff resumed the possession thereof, the value of the horses retained by the defendant, and any other loss or injury sustained by the plaintiff from the neglect or refusal of the defendant to carry his freights in the season of 1856, with interest thereon, deducting therefrom the amount paid by the defendant towards the purchase money for the boat and horses.

The judge in his charge advised the jury that the plaintiff was entitled to recover the $800, the price fixed in the contract, on the sale of the boat and horses,.and interest from date, less the sum of $550, for which the plaintiff sold the boat, the same to be applied as of the time of such sale, and less also the four payments of $40 each made on the contract. The charge treats the plaintiff as a trustee of the boat. He was not such a trustee. He has never parted with the title.

He was selling his own boat, as he lawfully might. If the boat had deteriorated in value while in the defendant's possession, the plaintiff was entitled to throw such loss upon him and recover the difference in value; but he obviously could not by his own voluntary act, without notice to the defendant, and without his knowledge, by a private sale of the boat, fix the measure of his damages. This would open the door to great injustice in such cases. If the plaintiff were to be regarded as a mortgagee or pledgee in possession, having merely a lien on the boat for his debt—the balance due on the purchase—he could not then sell at private sale without notice to the defendant, and bind him by the price. (2 *Kent*, 82, 83. 2 *Story*, 1008.)

But if the plaintiff is to be regarded as a vendor in possession, and entitled to sell the boat and charge the vendee with the difference between the contract price and that realized at the sale, he should still not have sold without notice to the defendant. (*Sands* v. *Taylor*, 5 *John.* 395. *Bement* v. *Smith*, 15 *Wend.* 493.)

I think the exception to the charge on this point well taken, and that the judgment should be reversed, and a new trial granted.

New trial granted.

[CAYUGA GENERAL TERM, June 6, 1859. *T. R. Strong*, *Johnson* and *Smith*, Justices.]