## GORDON *v.* NORRIS & a.

To maintain an action for goods bargained and sold, the property in the goods must have passed to the vendee though they are not delivered, and the vendee must be in a position to recover the goods in trover should any one take them away, or to sustain the loss if the goods should be stolen or destroyed by fire.

The measure of damages in an action for goods bargained and sold is the contract price for the goods.

When the vendee refuses to receive and pay for ordinary goods, wares and merchandise, which he has contracted to purchase, the measure of damages which the vendor is entitled. to recover, is not ordinarily the contract price of the goods, but the difference between the contract price and the market price or value of the same goods at the time when the contract was broken.

But when an artist prepares a statue or a picture of a particular person, to order, or a mechanic makes a specific article in his line, to order, and after a particular measure, pattern or style, or for a particular use or purpose, when he has fully performed his part of the contract and tendered or offered to deliver the article thus manufactured according to contract, and the vendee refuses to receive and pay for the same, he may recover as damages in an action against the vendee for breach of the contract, the full contract price of the manufactured article.

But in such case, or in the case of an ordinary contract for the purchase and sale of goods and merchandise, if the vendee refuses to accept the property, the vendor may, if he choose, after notice to the vendee, sell the property at auction and recover of the vendee the difference between the contract price and the price for which the goods were sold.

ASSUMPSIT, by Nathaniel Gordon against John L. Norris and George B. Neal, on account annexed, and for goods sold and delivered and goods bargained and sold, with a special count for not taking and paying for a quantity of hay alleged to have been sold by the plaintiff to the defendants, on June 5th 1867, at $38 per ton. The suit was brought January 30, 1868, to recover the price of twenty-seven tons and six hundred pounds of hay sold, after deducting the sum of $500, advanced towards it by the defendants.

The plaintiff's case was, that he sold to the defendants this hay, then in his barn, the price to be paid in advance, and the hay then to be hauled by plaintiff, and delivered at the Kingston depot, about two miles from the barn. The defendants contended that they. purchased only the good English hay, and that much of the plaintiff's hay was not of that quality. It appeared that the bargain was made June 5, 1867, when the defendants paid towards the hay $500, and soon after the price of hay fell considerably; none of it was delivered, the parties differing as to what hay was sold, and about paying

in advance; and on July 30, 1867, they entered into an agreement under their hands and seals, reciting the sale and purchase of the hay, and that the parties had agreed upon Winthrop H. Dudley of Brentwood to assort the hay, and saying that he " is hereby requested to separate the swale hay from the good hay, as the said Norris and Neal are to have the good hay," and the parties will pay him for his services. Either party may read this agreement at the hearing, and also the declaration. Mr. Dudley made no assorting of the hay until April 7, 1868, when he made his report, that there were 16 tons 1301 lbs. of good hay, and 11 tons 168 lbs. of mixed or swale hay. The assorting was made with the assent of the parties, although the plaintiff objected that it was not done according to agreement, which was to separate it into *good* hay and *swale* hay, and not *mixed or swale hay*. At the January term, 1869, this action was referred, and a report made by the referee at January term, 1870, allowing the plaintiff the full price of all the hay at $38 per ton with interest, and thereupon the defendants moved to set aside the report.

It appears that the referee went upon the ground that plaintiff ought to recover the full price of the hay, and that the title to it would thereupon vest in the defendants; finding that defendants examined it before they bought, and knew that it was mixed hay, and that the bargain was for the whole of it at $38 per ton, and he also regarded the agreement of July 30, 1867, as not carried out, and as not determining definitively that defendants were to take only the good hay, but only as evidence bearing upon the question what was the original contract, which he found to be for the whole hay at $38 per ton. If the court should be of the opinion that the measure of damages would be, under the circumstances here, only the difference between the contract price and the actual value of the hay when it ought to have been taken and paid for, and that the title to the hay would not vest in the defendants, the report is to be set aside, and the case recommitted; and so if the court should be of the opinion that the agreement of July 30, 1867, is to be regarded as determining that the purchase was only of the good hay.

If the decision should be the other way upon all these points, there is to be judgment on the report.

These questions were reserved for the whole court.

*C. W. Bell,* for defendants.

The defendants contend, 1st: That the property in the hay did not pass, and, therefore, this action could not be maintained on the common counts. *Elliott* v. *Pybus,* 10 Bing. 512; *Atkinson* v. *Bell,* 8 B. & C. 277; 2d: That on the special count, the damages should have been the difference between the contract price and the value of the hay, when the contract was broken.

I. Much remained to be done on both sides; payment which was always insisted on as a preliminary; pressing, weighing, hauling to the depot. See the special count. *Fuller* v. *Bean,* 34 N. H.

300, 301; *Banchor* v. *Warren*, 33 N. H. 185; *Smith* v. *Smith*, 27 N. H. 251; *Warren* v. *Buckminster*, 24 N. H. 342; *Messer* v. *Woodman*, 22 N. H. 177; *Kelsea* v. *Haines*, 41 N. H. 251; *Ockington* v. *Richey*, 41 N. H. 279; *Bailey* v. *Smith*, 43 N. H. 143; *Davis* v. *Hill*, 3 N. H. 382; *Weld* v. *Carne*, 98 Mass. 154; *Claflin* v. *R. R.*, 7 Allen 344; *Hunter* v. *Wright*, 12 Allen 550; *Binge* v. *Cone*, 6 Allen 412; *Stinson* v. *Clark*, 6 Allen 340; *Ropes* v. *Lane*, 9 Allen 510; *Tempest* v. *Fitzgerald*, 3 B. & Ald. 680; *Ropes* v. *Lane*, 12 Allen 599; *Riddle* v. *Varnum*, 20 Pick. 283; Story on Sales § 302.

"The transfer of personal property is effected by an executed contract, and this consists of a contract or agreement on the terms of sale, by the parties or their agents and a delivery, actual or constructive, pursuant to the terms of such contract. Delivery is essential. Without delivery the property does not vest in the vendee so as to enable him to make title to a third party, and until it vests in the vendee, it remains in the vendor." *Horlow* v. *Ellis*, 15 Gray 231.

It was expressly provided here, that full payment should precede delivery, and therefore the property did not pass. *Whitney* v. *Eaton*, 15 Gray 228; *Ferguson* v. *Clifford*, 37 N. H. 103.

II. The referees' award could not transfer the property because that award did not attempt to do any such thing, and if it had, it would have been void as exceeding the submission which was only of the issues in this suit.

III. The hay being still Gordon's, the damages would be equal to the injury done to the plaintiff, that is, the difference between the contract price and the market price when the contract was broken. *Rand* v. *R. R.*, 40 N. H. 87; *McKean* v. *Turner*, 45 N. H. 205; *Woodbury* v. *Jones*, 44 N. H. 209; *Pinkerton* v. *R. R.*, 42 N. H. 457; 2 Green Ev. § 253; *Bartlett* v. *Blanchard*, 13 Gray 430; Story on Sales § 438; *Leigh* v. *Patterson*, 8 Taunt. 540; *Garrisford* v. *Carrol*, 2 B. & C. 624.

IV. The award of Dudley was good. It settled the only question raised; it separated what the defendants were to take, ( i. e. the "good" hay.) The rest was unnecessary and surplusage. It was then conclusive in this reference. *Carey* v. *Wilcox*, 6 N. H. 177.

*Stickney*, for plaintiff.

This action is brought to recover the balance due for certain hay bargained and sold by the plaintiff to the defendants on June 5, 1867. The plaintiff claims to recover upon the count for goods bargained and sold, and upon the 4th count, which is special to recover the price of the same hay. The plaintiff bargained and sold to the defendants all the hay in his barn, except two joints of swale hay, at $38 per ton, to be paid for before it was delivered and he was to press and weigh the hay and have it ready to be delived at the depot, and he agreed to deliver or haul it to the depot after it was paid for;

no particular time was specified when it was to be done and the defendants agreed to take the hay on those terms and paid the plaintiff $500 down to bind the bargain.    The plaintiff afterwards pressed and weighed the hay and had it ready to be delivered and notified the defendants of it.

Our position is, that when the plaintiff had pressed and weighed the hay and had it ready to be delivered, and notified the defendants of it, the bargain and sale was then complete and the plaintiff was entitled to his pay for the hay, and the property in the hay passed to the defendants.    The delivery or hauling of the hay to the depot, was something which he agreed to do for the defendants, after they had paid him for the hay.    It was not a condition precedent to his being entitled to his pay or to the passing of the property in the hay to the defendants.    When the plaintiff had put the hay in a deliverable state by pressing and weighing it, he had done all that he was required to do or could do before he received his pay for the hay; it was just the same then precisely, as if the bargain and sale had been made after the hay had been pressed and weighed and the quantity ascertained.    Suppose the bargain and sale had been made after the hay had been pressed and weighed and the defendants had paid the $500 down or had paid in full for the hay and the plaintiff agreed to haul the hay to the depot, who would own the hay after the defendants had paid for it and before it was hauled to the depot? Or, suppose the defendants, after the hay had been pressed and weighed, had paid the plaintiff the balance due for the hay, who then would own the hay after it had been paid for and before it was hauled? The defendants undoubtedly would own it.    The passing of the property in goods bargained and sold, does not depend upon their being paid for.    It is well settled, that so long as any thing remains to be done by the vendor, the property does not pass, but when everything is done that is required, as when the goods are measured or weighed or separated and put in a deliverable state, the property passes to the vendee; the vendor is then entitled to the price and may maintain an action for goods bargained and sold before the delivery of the goods.    1 Chit. Plead. 339—2 do. 52 Note R; Chitty on Con. 374-8 — 2 Kent Com. 492-6; 1 Parsons on Con. 440-1—2 Blac, Com. 447-8; *Messer* v. *Woodman* 22 N. H. 179; *Bailey* v. *Smith*, 43 N. H. 141; *Fuller* v. *Bean* 34 N. H, 290; *Warren* v. *Buckminster*, 24 N. H. 336; *Damon* v. *Osborn* 1 Pick. 476; *Riddle* v. *Varnum* 20 Pick. 280; *Hind* v. *Whitehouse*, 7 East. 276; *Hanson* v. *Meyer*, 6 East 616; *Whitehouse & a.* v. *Frost & a.*, 12 East 614; *Crawford* v. *Smith* 7 Dana 59-61,    In Chitty 377, it is said, that when a certain quantity of goods is sold out of a larger quantity, " no property passes and the vendee cannot be sued for goods bargained and sold until there has been a selection and appropriation made of the part sold from the larger quantity of goods.    But when the vendor has made such selection and appropriated some specific portion of the entire bulk for the benefit of the vendee, the property in the article sold passes to the vendee, although the vendor is not bound

to part with the possession until he is paid the price." The same principle is held or recognized in *Mesier* v. *Woodman* and *Bailey* v. *Smith*, and other caaes cited.

There can be no doubt, we think, as to the law on this subject. The only question is whether this case comes within that class of cases, where the property in goods bargained and sold passed to the purchaser before the goods were delivered. We think it does for the reasons we have given.

It is said in *Fuller* v. *Bean*, and in *Riddle* v. *Farnum*, and in other cases, that whether the property passed to the purchaser or not in such cases, was a question of intention between the parties. The court in *Fuller* v. *Bean*, say, " The question must always be what was the intention of the parties in this respect." That intention is to be determined from the language and conduct of the parties. We claim that the parties intended that the property should pass, and understood that it did pass. The plaintiff always so intended and understood it, and it is evident that the defendants so understood it, from the fact that they paid down so large a sum; if their object had been only to bind the bargain, five dollars or one dollar would have been sufficient for that purpose. It is evident from the conduct of the defendants afterwards that they considered the hay as their property. They wrote to the plaintiff requesting him to store the hay for them, and offered to pay him for storing it, which they would not have done, if they had not considered the hay as their property. We asked the court to state that fact in the case; it is not stated, but it was understood that it could be stated afterwards if found material. We deem the evidence important as showing how the defendants considered it at the time. Whether the parties so intended and understood or not, was a question of fact for the refeee to decide from all the evidence before him, and we think his decision should be conclusive upon that question. So the question, whether the defendants bought all the plaintiff's hay that was pressed and weighed or only the good English hay, as the defendants now claim, was a question of fact for the referee to decide from all the evidence before him. The agreement of July 30, 1867, was only one piece of evidence laid before him, and that might be controlled by other evidence and was so controlled in his opinion, for he found that the defendants examined the hay before they bought, and knew that it was mixed hay and that they bargained for the whole of it.

This agreement of July 30 does not merge, or extinguish the original contract, as claimed by the defendants; it, in fact, has no effect whatever upon that contract.

1. Because it was never carried out. The defendants never performed their part of the agreement; they did not take the good hay and pay for it as they should have done.

2. The award was contrary to the submission; Dudley was " to separate the swale hay from the good hay ;" he separated it into good hay and swale or mixed hay. Swale hay and mixed hay are very different things. Swale hay is foul-meadow hay of little

value. Mixed hay is good hay. Most of the hay raised in this section, is more or less mixed. All the plaintiff's hay was somewhat mixed, and the defendants knew it; but it was good market hay, and their complaint as to the quality is only a pretence got up to get rid of their bargain because the price of hay had fallen.

3. The report was not made until after the action was commenced, and if relied upon as a defence it should be pleaded.

4. The agreement was an attempt at a compromise, which failed through the fault of the defendants in not taking the good hay and paying for it. The case raises the question as to how the damages should be assessed. If the court sustain our view, that the property passed to the defendants, the assessment by the referee was correct, being the agreed price of the hay and interest. But if the court should be of opinion that the hay did not pass to the defendants and would not pass, if the report should be accepted and that the assessment of damages was wrong, the report is to be set aside.

SARGENT, J. The two counts, one upon the account annexed and the other for goods sold and delivered, are substantially the same, both forms being recognized as proper in cases of goods sold and delivered. *Messer* v. *Woodman*, 22 N. H. 176; *Newmarket Iron Foundry* v. *Harvey*, 23 N. H. 395. It is not claimed that the plaintiff can recover in this case upon either of these counts.

Can he recover upon the count for goods bargained and sold? The referee does not inform us whether he found that the goods were bargained and sold, or whether his award is based upon the special count, in the case, for not receiving and paying for the hay contracted to be sold, and purchased under the special contract.

In order to find upon the count for goods bargained and sold, he must have found that the goods were bargained and sold, before the date of the writ, because anything that has happened since the suit was commenced, cannot affect the plaintiff's right of recovery in this suit. The agreement that Dudley should sort the hay, &c., was made long before suit brought, but it was not sorted by him until after the suit was commenced, and the defendants do not rely upon any award as made by him. They have not pleaded it, and after it was made they have agreed to a reference of this case generally and the referee has heard the parties and made his report. The report of Dudley was introduced in evidence, and considered by the referee which was all that the defesdants claim, and we see nothing in the case that leads us to think that the parties intended that his action should be final or conclusive.

He recognized and introduced an element in his action not known in the agreement of submission, which may have made a material difference in his finding. The parties agreed that he should divide it, into good hay and swale hay. He divided into good hay and *mixed* or swale hay. Mixed hay may be good hay for many purposes, where swale hay is not. The objection that he did not follow the submission, we think was well taken. We think the referee de-

cided correctly in regard to the submission to Dudley, that it was not decisive of the case, but to be considered only as evidence tending to show the terms of the original contract.

We infer from the statement of the court in the case that the referee did not find his award upon the count for goods bargained and sold. That was a question which he might properly decide upon the evidence before him, and if he had found his award upon that count then the award would have been right in amount, because if he found that the hay had been bargained and sold before the date of the writ, that the property had, in fact, passed to the defendants, then the damages would be the contract price for the hay. But the statement in the case is, that the referee did not find that fact in that way substantially, but that he went upon the ground that plaintiff ought to recover the full value or price of the hay, and that the title to the hay would thereupon vest in the defendants, in other words, that the property in the hay would not vest, and was not by the contract to vest in the defendants until the whole purchase money should be paid, which was not paid at the date of the writ and has not been since. If that is the correct version of the matter, then this action cannot be maintained on the count for goods bargained and sold. In this view of the case there had been no actual sale, no passing of the property, but only a contract to sell and deliver when the hay should be paid for.

Assuming then that the award of the referee is based upon the special count in the writ, the defendants are liable under that count for any damages the plaintiff may have suffered by the defendants breaking that contract.

We certainly cannot find upon the evidence stated in the case, that the referee did not decide this question aright. In fact much of the evidence stated favors that view of the case. The authorities are pretty uniform that to maintain this action for goods bargained and sold the property in the goods must have passed to the vendee and he must be in a position to recover the goods in trover, should any one take them away, or that he must sustain the loss of the goods, should they be stolen or destroyed by fire. *Atkinson* v. *Bell*, 8 B. & C. 277; *Bemet* v. *Smith*, 15 Wend. 493; *Rhoades* v. *Thwaites*, 6 B. & C. 392; 4 Plil. Ev. (C. & H.) 113 and note 327 page 209; *Elliott* v. *Pybus*, 10 Bing. 512: *Messer* v. *Woodman*, 22 N. H. 117; *Ockington* v. *Richey*, 41 N. H. 279; *Bailey* v. *Smith*, 43 N. H. 143; *Pennyman* v. *Hartshorn*, 13 Mass. 87.

The remaining question is as to the rule of damages that the referee should have adopted, whether in finding upon the special contract as we assume he did, he should have allowed the plaintiff as damages the whole of the contract price, or only the difference between the contract price, and the market price at the time the contract was broken.

Sedgwick, in his work on damages (5th Ed.) page 312, says: "When the vendee is sued for nonperformance of the contract on his part, in not paying the contract price, *if the goods have been de-*

*livered*, the measure of damages is of course the price named in the agreement. But if their possession has not been changed, it has been doubted whether the rule of damages is the price itself, or only the difference between .the contract price and the value of the article at the time fixed for its delivery. It seems to be well settled in such cases, that the vendor can resell them if he see fit, and charge the vendee with the difference between the contract price and that realized at the sale.

But if the vendor does not pursue this course, and without reselling the goods, sues the vendee for his breach of contract, the question arises, which we have already stated, whether the vendor can recover the contract price or only the difference between that price and the value of the goods which remain in the vendor's hands, and the rule appears to be that the vendor can recover the contract price in full."

He cites as an authority, *Graham* v. *Jackson*, 14 East 498; which was upon a special contract to purchase three hundred tons of Campeachy log wood at thirty-five l. per ton, to be of real merchantable quality, and such as might be determined to be otherwise by impartial judges to be rejected. Under this contract the plaintiff, the vendor had shipped the three hundred tons of log wood from New York and tendered it to the purchaser in England. It was held that under that contract and the circumstances of the case, the vendee was bound to take so much of the wood tendered as turned out to be of the sort described, at the contract price though it turned out upon examination that sixteen out of the three hundred tons, was of a different and inferior quality. But this was a construction given to that particular contract, and not the statement of any general principle, to be applied to all cases.

He then says, " the question has been considered in New York and decided in the same way. He cites, *Bement* v. *Smith*, 15 Wend. 493. But an examination of that case shows, that the decision is put upon the express grounds that what the plaintiff did in the case amounted to a *delivery* of the property. The declaration was for work and labor and goods sold, and also upon special counts, setting forth the contract and alleging *a delivery* of the goods by plaintiff. This cannot be an authority for the doctrine claimed.

But there is a distinction between that case, and the ordinary cases of goods sold and delivered, which is alluded to in the opinion viz., the distinction between a contract to sell goods, then in existence, and an agreement to furnish materials and manufacture an article in a particular way, and according to order, which is not yet in existence. The latter is said not to be so much a contract for the sale and purchase of goods, as a contract for work and labor merely, and it is held that in that class of cases the statute of frauds does not apply, when there is nothing paid and no actual delivery.

In a large class of cases of that kind, where the plaintiff has made surgical instruments of a particular kind, and according to order, for the defendant who had patented the same, and which would ot

course be worthless in the hands of the plaintiff, or where a tailor had made a suit of clothes to order, of a particular description, and for a particular measure, or a shoemaker had made boots or shoes to order and of a particular size and pattern, or the carriage maker had made a carriage in the same way, of a particular style and pattern, or the artist has painted a portrait of an individual to order, or an engineer has contructed an engine according to order for a particular use, &c., though the mechanic or artist may sell the goods, if he choose and recover of the defendant, the difference between the contract price, and the price for which the article was sold, yet it is held that he may if he choose, when he has fully performed his part of the contract and tendered the article thus manufactured to the defendant, or offered it at the place appointed, recover the full value of the article and leave the defendant to sell or use or dispose of the article at his pleasure, and for the reason, in addition to that already stated that the article thus manufactured for a particular person, or according to a particular pattern, or for a particular use, may be of comparatively little value to any body else, or for any other use or purpose, but this class of cases are recognized as exceptions to the general rule, which is to be applied in the sale of ordinary goods or merchandise which have a fixed market value. *Allen* v. *Jarvis*, 20 Conn. 38; *Bement* v. *Smith*, 15 Wend. 493 and cases; *Ballantine* v. *Robinson*, 26 Penn. 177.

Mr. Sedgwick also cites a case from Massachusetts as sustaining his his view.    *Thompson* v. *Algier*, 12 Met. 428.    But an examination of the case shows that it was a contract for the purchase and sale of railway shares and that there had been a part payment for the same, and that while the contract was in force, the plaintiff had actually transferred the stock on the books of the company to the vendee, so that the plaintiff had actually lost his title to the shares, and upon this special ground the court held that plaintiff was entitled to recover the contract price.    But in that case it is stated distinctly that the general rule in that state, is, that in contracts for the sale of personal property, the defendant would be liable to pay the difference between the agreed price and the market value of the goods on the day of delivery.

Dewey, J., in the opinion, page 443, says, that in ordinary cases this rule would do entire justice to the vendor.    He would retain the property as fully in his hands as before, and a payment of the difference between the market price and the price stipulated, would fully indemnify him.    And that in that case, *if* the defendant had repudiated the contract before any transfer of stock had been made to him on the books of the corporation, that rule might have been properly applied here.    This case then stands upon special grounds, but it states fully and plainly what the general rule is understood to be in that state, and is by no means an authority for the doctrine which the author seeks to establish.

Mr. Sedgwick admits that where the plaintiff has not the goods that he agrees to sell, but makes a side contract with another to fur-

nish them, he will only be allowed to recover the difference between the original contract price and the market price at the time of the offer with interest.   He then cites some authorities where goods were sold and delivered, to be paid for by bill or note payable at a future day, and the bill or note is not given.   There though the vendor cannot maintain assumpsit for the goods sold and delivered, until the term of credit has expired, yet he may sue immediately for the breach of the special agreement, and may recover as damages the whole value of the goods.   But that does not militate against the general rule, because it comes under another general rule, that when the goods are sold and delivered, the contract price is the measure of damages.

We have seen that the general rule in Massachusetts, in actions for the non-acceptance of property sold or contracted for, is the difference between the price agreed to be paid for it and its real value, or market price.   *Thompson* v. *Algier*, 12 Met. 428, 443.

Such is distinctly stated to be the general rule in Connecticut, in *Allen* v. *Jarvis*, 20 Conn. 38 ; and in Pennsylvania, *Girard* v. *Taggart*, 5 Sergeant & Rawle 19 ; *Ballantine* v. *Robinson*, 46 Penn. 177 ; and in Wisconsin, *Ganson* v. *Madigan*, 13 Wis. 67 ; and in New York, *Dana* v. *Fiedler*, 2 Kern. 41 ; *Orr* v. *Bigelow*, 14 N. Y. 556 ; *Dey* v. *Dox*, 9 Wend. 129 ; *Davis* v. *Shields*, 24 Wend. 322 ; *Stanton* v. *Small*, 3 Sandf. 230 ; *Mallory* v. *Lord*, 29 Barb. 454, 465 ; and in Missouri, *Whittemore* v. *Coates*, 14 Mo. 9 : also, in Kentucky, *Williams* v. *Jones*, 1 Bush. 621, 627, in which Hardin, J., delivering the opinion says : " The true measure of damages for the failure to receive and pay for property contracted for is not the contract price, but it is the difference between the contract price and the actual value of the property, when it should have been received under the contract.

So in a contract for the sale of railway shares.   The rule of damages, which either party is entitled to recover, is the difference between the contract price and the market price at the time of delivery.   Red. on Rail. (Ed. of 1858) 54 ; 1 Red. on Rail. 132, and cases cited.

There is some diversity prevailing in regard to the rule of damages for breach of a contract for the sale and purchase of lands.   In New York, it is held that in an action against the purchaser for not receiving a deed and paying for lands bargained for, the damages are the whole value of the land, though the purchaser gets no title to it. *Richards* v. *Eddick*, 17 Barb. 260.

But such is not the rule in the English courts.   *Laird* v. *Prince*, 7 Mees. & Wells. 474 and cases cited.   Neither is such the rule in Massachusetts ; for though there are *dicta* favoring the New York rule,—in *Sears* v. *Boston*, 16 Pick. 357 ; in *Gile* v. *Bicknell*, 2 Cush. 358 ; and in *Jacobs* v. *Railroad*, 8 Cush. 223,—yet the question is directly raised, considered and decided in *Old Colony Railroad* v. 6 *Evans*, Gray 25, in which it is held that "upon more full consideration of the question of the measure of damages in an action at law, when the

defendant has refused to receive the deed tendered him, the court are of opinion that the proper rule of damages in such a case is, the difference between the price agreed to be paid for the land, and the salable value of the land at the time the contract was broken.

In this state we find it settled, in *Stevens* v. *Lyford*, 7 N. H. 360, that upon a breach of a contract for the delivery of lumber, the purchaser was entitled to recover the difference between the value of the lumber at the place where it was to be delivered, and the sum to be paid. And in *Rand* v. *Railroad*, 40 N. H. 79, it is assumed that the same rule would apply to the vender, and that the proper rule of damages in case the subscriber of railroad stock refuses to pay for and receive the same, when no certificate of the stock has been issued, would be the difference between the price at which he agreed to take the stock, and its actual or market value at the date of the breach of the contract.

And in *McKean* v. *Turner*, 45 N. H. 203, 205, Bellows, J., in commenting upon *Rand* v. *Railroad*, *supra*, says : " There the claim was upon the contract of the trustee to take and pay for some shares in the capital stock of the corporation, which shares had never been delivered or accepted. The measure of damages, therefore, was the difference between the contract price and the actual value of the stock at the time of the breach of the contract, and ordinarily the market value of stock can readily be determined."

In the case before us, we understand from the case that the referee found that the property had not passed to the defendant. It was not a specific article of property that had been manufactured to order for the defendant, but the property in question was hay, which had a market value easily ascertainable. Upon the finding of the referee, as we understand it, this property remained not only in the possession of the plaintiff but his property.

We think in such a case, it would be in accordance with the great weight of authority, besides being reasonable and just in itself, to hold that the rule in assessing plaintiff's damages, would be to give him the difference between the contract price of the hay and its market value, at the time when the defendant should have received and paid for it; taking into account, of course, the fact that by the contract the plaintiff was to draw the hay to the depot to be delivered, which was included in the contract price.

According to the provisions of the case, the report is set aside and the

*Cause recommitted to the referee.*